## In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

### MDL No. 381.

United States District Court,
E.D. New York.

Sept. 11, 1985.

Stephen J. Schlegel, Schlegel & Trafelet, Ltd., Chicago, Ill., Thomas Henderson, Henderson & Goldberg, Pittsburgh, Pa., Phillip E. Brown, Hoberg, Finger, Brown, Cox & Molligan, San Francisco, Cal., Stanley Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, John Q. O'Quinn, O'Quinn & Hagans, Houston, Tex., Neil R. Peterson and Gene Locks, Greitzer & Locks, Philadelphia, Pa., Newton B. Schwartz, Houston, Tex., Irving Like, Reilly, Like and Schneider, Babylon, N.Y., David J. Dean, Dean, Falanga & Rose, Carle Place, N.Y., Aaron Twerski, Hempstead, N.Y., of counsel, for plaintiffs.

Leonard Rivkin, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., Philip Pakula, Townley & Updike, Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, William Krohley, Kelley, Drye & Warren, Thomas Beck, Arthur, Dry & Kalish, Richard Goldstein, Shea & Gould, New York City, of counsel; David R. Gross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, New York City, Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., Henry G. Miller, Clark, Gagliardi & Miller, White Plains, N.Y., for defendants.

Arvin Maskin, Dept. of Justice, Washington, D.C., for third-party defendant U.S.

## MEMORANDUM, ORDER AND JUDGMENT ON DISTRIBUTION OF SETTLEMENT FUNDS TO AUSTRALIAN AND NEW ZEALAND CLASS MEMBERS

WEINSTEIN, Chief Judge.

The court's May 28, 1985 Memorandum, Order and Judgment on Distribution of the Settlement Fund, 611 F.Supp. 1396, allocated 2 percent of the Agent Orange settlement fund to Australian and New Zealand class members, 1.8 percent to Australia and 0.2 percent to New Zealand. No specific distribution plan was approved at that time for either country.

By letter dated August 5, 1985, Special Master Kenneth R. Feinberg, Esq. reported to the court that the Australian and New Zealand governments were willing to oversee, support and monitor the creation and operation of distribution mechanisms in their respective nations. Specifically, it is

proposed that private trusts will serve as repositories for the settlement funds allocated to those countries and as trustees for distribution of the funds to eligible claimants. Mr. Feinberg recommended that these proposals be adopted by the court.

On August 6, 1985, the court issued an order to show cause why the Special Master's recommendations concerning the distribution of settlement funds to Australian and New Zealand class members should not be adopted by the court. The order to show cause was returnable at 12:00 noon on September 3, 1985.

Several submissions have been received by the court in response to the order to show cause. Two submissions, one by Ross V. Lonnie & Co. and one by R.F.M. Hollow, raise questions about the membership of the Australian trust's board of trustees, including the degree to which its proposed membership would adequately represent the Australian class members. Mr. Hollow's submission also raises questions about publication of the Australian trust proposal to class members in that country.

No one, however, has made a submission opposing the creation of a trust mechanism in each country as the means of distributing settlement funds. Considerable correspondence from responsible authorities in the two countries indicates that a highly responsible group will properly administer sensible distribution schemes tailored to the special conditions in these two countries. The Special Master's recommendations therefore are adopted as follows:

Two private trusts will be created, one for each of the two countries. Each trust will be organized under the laws of its respective country, preferably as a tax-exempt organization. Each trust will administer the settlement funds allocated to it by the court, and will be responsible for distribution of the funds to eligible class members in its country.

The members of each board of trustees will be paid their out-of-pocket expenses but no other fee for their services. The government will appoint the chairperson of the board of trustees.

The Australian government has indicated that it intends to appoint the Honorable Leycester Meares, former Justice of the Supreme Court of New South Wales, to the Australian trust board. The New Zealand government has indicated that it intends to appoint the Honorable Peter Mahon, former Justice of the High Court of New Zealand, to the New Zealand trust board. Both appointments are satisfactory. Other reasonable provisions may be made by the respective governments respecting membership of the boards, including numbers, methods of selection and the like, subject to the approval of Justice Meares in the case of the Australian board and Justice Mahon in the case of the New Zealand board. So far as possible, each board of trustees should be a broadly based nonpartisan group that is socially, economically, politically and geographically diverse.

The specific criteria for distribution will be determined by each trust. Those criteria may be completely independent of those adopted by the court for United States claimants, although they must reflect the basic definition of the class. Any reasonable manner of distribution will be permitted. Disputes about distribution criteria will be decided by this court. Disputes about trust operations may be heard in the courts of the country under whose laws the trust was created.

Pursuant to its authority under Rule 23(e) of the Federal Rules of Civil Procedure and the Settlement Agreement between the parties to the class action, the court retains jurisdiction to make such further orders as are required. Each board shall make an annual report to the court.

Of the total settlement funds that will be available for distribution to the class (after payment of distribution expenses including attorneys' fees) at the time that all appeals have been completed, 1.8 percent will be allocated to Australia and 0.2 percent will be allocated to New Zealand. It is currently estimated that those figures will be $3.6 million and $400,000 respectively. The

clerk will present a separate order to authorize the actual payment.

The government and interested parties in each country are respectfully requested to proceed expeditiously to set up the trusts. The Special Master will be available for consultation.

The Australian Royal Commission has recently issued a report after a thorough study of the claims of Australian Vietnam veterans and their family members that they have suffered injuries related to Agent Orange exposure in Vietnam. This nine volume report is on file. The court has taken judicial notice of it. *See* Fed.R. Evid. 201.

The Commission report states that no causal connection exists between Agent Orange exposure and any medical problems. This conclusion is consistent with the finding of studies to date in this country and elsewhere. Nevertheless, as in the case of United States veterans and their families, a plan of distribution of settlement funds appears feasible. *See In re "Agent Orange" Product Liability Litigation,* 611 F.Supp. 1396 (E.D.N.Y.1985) (Memorandum, Order and Judgment on Distribution of the Settlement Fund). Settlement funds therefore will be distributed to Australian and New Zealand class members in accordance with this court's previous orders and judgments and this order and judgment.

Distribution of settlement funds is stayed pending completion of appeals. No payments to claimants or funding of services can take place until the appellate process has concluded. During the interim, subject to this court's supervision, the Australian and New Zealand trusts may be established, contracts may be entered into conditioned upon the outcome of the appellate process, payment applications may be developed, distributed and analyzed, and eligibility and other distributional criteria may be developed and adjusted.

Prior to final appellate decision, reasonable necessary and incidental expenses of preparing to administer the settlement fund will be paid on this court's order out of the settlement fund. Any contract providing for payment of more than $10,000 U.S. must receive the prior approval of the court. Contracts entered into, to the extent of performance prior to any final appellate decision, and payments made pursuant to court approval, shall be valid whatever the ultimate outcome of any appeals.

After appeals have been completed and payments of the allocated settlement funds have been made by the clerk to the respective trusts, approval of this court of contracting or other acts of the trusts is not required.

This order constitutes a final judgment.

So ordered.