Michael F. RYAN, et al., Plaintiffs,

v.

DOW CHEMICAL COMPANY, Monsanto Company, Hercules Incorporated, T H Agriculture & Nutrition Company, Inc., Diamond Shamrock Chemicals Company, Uniroyal Inc., and Thompson Chemicals Corporation, Defendants.

In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

Shirley IVY, et al., Plaintiffs,

v.

DIAMOND SHAMROCK CHEMICALS COMPANY, et al., Defendants.

Ronald L. HARTMAN, et al., Plaintiffs,

v.

DIAMOND SHAMROCK CHEMICALS COMPANY, et al., Defendants.

Nos. 79 Civ. 747, 89 Civ. 3361 and 90 Civ. 3928.
MDL No. 381.

United States District Court, E.D. New York.

Oct. 4, 1991.

As Amended Nov. 15, 1991.

See also 781 F.Supp. 934.

Robert M. Hager, Washington, D.C., for Ivy plaintiffs.

Kelly L. Newman, Houston, Tex., for Hartman plaintiffs.

Cadwalader, Wickersham & Taft by Michael M. Gordon, New York City, for Diamond Shamrock Chemicals Co.

Clark, Gagliardi & Miller by Morton B. Silberman, White Plains, N.Y., for T.H. Agriculture & Nutrition Co., Inc.

Lord Day & Lord, Barrett Smith by John C. Sabetta, New York City, for Monsanto Co.

Kelley, Drye & Warren by William C. Heck, New York City, for Hercules Inc.

Rivkin, Radler, Bayh, Hart & Kremer by Steven Brock, Uniondale, N.Y., for Dow Chemical Co.

Shea & Gould by Myron Kalish, New York City, for Uniroyal, Inc.

WEINSTEIN, District Judge:

## TABLE OF CONTENTS

I. INTRODUCTION .................................................. 904
 A. *Agent Orange* Litigation: 1979–1984 ...................... 904
 B. The Settlement Agreement .................................. 908
 C. Dismissal of Opt–Out Claims ............................... 908
 D. Appeals ................................................... 909
II. OPERATION OF THE SETTLEMENT FUND ...................... 909
 A. Veteran Payment Program .................................. 910
 B. Class Assistance Program .................................. 911
III. THE PRESENT ACTIONS ...................................... 911
 A. *Hartman I* ................................................ 912
 B. *Ivy* and *Hartman II* ..................................... 912
IV. LAW ........................................................... 914
 A. Subject Matter Jurisdiction ................................ 914
 1. Adequacy of Notice of Removal ....................... 914
 2. Court's Retained Jurisdiction ........................ 915
 3. Court's Power to Enforce Its Injunction .............. 916
 4. Federal Nature of Plaintiffs' Claims ................. 916
 5. Court's Power to Order Removal ...................... 918
 B. Motion to Dismiss ......................................... 918
V. EQUITY ........................................................ 918
VI. CONCLUSION .................................................. 920
VII. APPENDICES

---

Plaintiffs consist of two groups: first, those veterans and family members within the class covered by the *Agent Orange* class action pending in this court, and second, civilians claiming injury from Agent Orange who were never members of the class. Defendants are the same as those in the class action.

The current suits began as state court actions in Texas. They were removed to the federal court in Texas and then transferred by the Multidistrict Panel to the Eastern District of New York. Plaintiffs now seek to remand their actions to Texas state court for lack of federal subject matter jurisdiction. Defendants move to dismiss plaintiffs' claims or for an injunction prohibiting plaintiffs from continuing their actions.

As explained in this memorandum, the plaintiffs who are members of the Agent Orange class must have their suits dismissed; they are free to share in the proceeds of the class action settlement to the extent they can demonstrate entitlement under the distribution plans being administered by the court. As it pertains to the civilian plaintiffs—who are not members of the class—the plaintiffs' motion to remand raises issues concerning the scope of 28 U.S.C. § 1442(a)(1) that require further consideration. These issues will be addressed in a separate memorandum.

## I. INTRODUCTION

### A. *Agent Orange Litigation: 1979–1984*

The current controversy is part of a continuing litigation whose first phase ended in settlement after six years of effort by scores of lawyers and many court officers—special masters, magistrates, and judges. Among the hundreds of published and unpublished decisions, *see In re "Agent Orange" Prod. Liab. Litig.,* 475 F.Supp. 928 (E.D.N.Y.1979) (dismissing federal constitutional and statutory claims, reserving possible federal common law

claims, denying motion to limit communications to third parties); *In re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 737 (E.D.N.Y.1979) (finding subject matter jurisdiction on basis of federal common law issues), *rev'd*, 635 F.2d 981 (2d Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *In re "Agent Orange" Prod. Liab. Litig.*, 28 Fed.R.Serv.2d (Callaghan) 993 (E.D.N.Y.1980) (granting motion of terminally ill plaintiff to videotape his own deposition); *In re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 750 (E.D.N.Y.1980) (ordering government to refrain from destruction of documents pursuant to internal procedure); *In re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 753 (E.D.N.Y.1980) (various orders concerning modification of complaint and answers); *In re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 754 (E.D.N.Y. 1980) (ordering videotaped deposition); *In re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 756 (E.D.N.Y.1980) (establishing agenda for status conference); *In re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 757 (E.D.N.Y.1980) (requiring plaintiffs to file individual notices to retain right to bring actions against federal government); *In re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 762 (E.D.N.Y. 1980) (dismissing claims against government as third-party defendant, establishing case management plan, conditionally certifying Rule 23(b)(3) class, and denying defendants' motion for summary judgment); *In re "Agent Orange" Prod. Liab. Litig.*, 91 F.R.D. 616 (E.D.N.Y.1981) (establishing committee to review procedures for videotaped depositions); *In re "Agent Orange" Prod. Liab. Litig.*, 91 F.R.D. 618 (E.D.N.Y. 1981) (allowing motion to amend caption, denying motion to amend complaint, denying defendants' motion for summary judgment on "government contractor" defense); *In re "Agent Orange" Prod. Liab. Litig.*, 93 F.R.D. 514 (E.D.N.Y.1982) (allowing defendant to proceed with scheduled destruction of documents); *In re "Agent Orange" Prod. Liab. Litig.*, 534 F.Supp. 1046 (E.D.N.Y.1982) (denying reargument on dismissal of government as third-party defendant, denying interlocutory appeal, pro-

visionally dismissing claims against non-manufacturer defendants, denying motion to form steering committee for plaintiffs' counsel, denying motion for decertification of class, deferring decision on statute of limitations issues, and establishing elements of government contractor defense); *In re "Agent Orange" Prod. Liab. Litig.*, 537 F.Supp. 977 (E.D.N.Y.1982) (provisionally dismissing claims against non-manufacturer defendant); *In re "Agent Orange" Prod. Liab. Litig.*, 94 F.R.D. 173 (E.D.N.Y.1982) (appointing special master to supervise discovery); *In re "Agent Orange" Prod. Liab. Litig.*, 544 F.Supp. 808 (E.D.N.Y.1982) (denying motion to disqualify defense attorneys; provisionally dismissing claims against certain non-manufacturer defendants, and denying motion to implead suppliers); *In re "Agent Orange" Prod. Liab. Litig.*, 95 F.R.D. 191 (E.D.N.Y. 1982) (clarifying that denial of motion to implead suppliers was without prejudice); *In re "Agent Orange" Prod. Liab. Litig.*, 95 F.R.D. 192 (E.D.N.Y.1982) (affirming special master's ruling as to location of depositions); *In re "Agent Orange" Prod. Liab. Litig.*, 96 F.R.D. 578 (E.D.N.Y.1983) (adopting special master's protective order for discovery of government documents); *In re "Agent Orange" Prod. Liab. Litig.*, 96 F.R.D. 582 (E.D.N.Y.1983) (rejecting first amendment challenge to protective order); *In re "Agent Orange" Prod. Liab. Litig.*, 96 F.R.D. 587 (E.D.N.Y.1983) (adopting with modifications special master's order regarding videotaped depositions); *In re "Agent Orange" Prod. Liab. Litig.*, 97 F.R.D. 424 (E.D.N.Y.1983) (adopting protective order); *In re "Agent Orange" Prod. Liab. Litig.*, 97 F.R.D. 424 (E.D.N.Y. 1983) (adopting special master's protective order for Department of Agriculture documents); *In re "Agent Orange" Prod. Liab. Litig.*, 97 F.R.D. 427 (E.D.N.Y.1983) (adopting special master's procedures for discovery of documents possibly subject to executive privilege); *In re "Agent Orange" Prod. Liab. Litig.*, 97 F.R.D. 541 (E.D.N.Y.1983) (denying interlocutory appeal of decision deferring certification of class and determination of appropriate notice); *In re "Agent Orange" Prod. Liab.*

*Litig.,* 97 F.R.D. 542 (E.D.N.Y.1983) (affirming special master's denial of discovery request); *In re "Agent Orange" Prod. Liab. Litig.,* 565 F.Supp. 1263 (E.D.N.Y. 1983) (granting summary judgment for four defendants on government contractor defense; denying summary judgment for other defendants); *In re "Agent Orange" Prod. Liab. Litig.,* 98 F.R.D. 522 (E.D.N.Y. 1983) (adopting order of special master concerning discovery of government documents); *In re "Agent Orange" Prod. Liab. Litig.,* 98 F.R.D. 539 (E.D.N.Y.1983) (adopting special master's order to unseal documents in connection with summary judgment motions); *In re "Agent Orange" Prod. Liab. Litig.,* 98 F.R.D. 554 (E.D.N.Y. 1983) (denying request for reconsideration of order to unseal documents); *In re "Agent Orange" Prod. Liab. Litig.,* 98 F.R.D. 557 (E.D.N.Y.1983) (ordering special master to review discovery decisions in light of court's decision to try causality and liability issues); *In re "Agent Orange" Prod. Liab. Litig.,* 98 F.R.D. 558 (E.D.N.Y. 1983) (approving special master's order of additional discovery to clarify circumstances surrounding document destruction); *In re "Agent Orange" Prod. Liab. Litig.,* 570 F.Supp. 693 (E.D.N.Y.1983) (clarifying program for discovery); *In re "Agent Orange" Prod. Liab. Litig.,* 571 F.Supp. 481 (E.D.N.Y.1983) (granting motion of law firm to be relieved as lead counsel for plaintiffs and appointing new plaintiffs' management committee); *In re "Agent Orange" Prod. Liab. Litig.,* 99 F.R.D. 338 (E.D.N.Y.1983) (approving discovery recommendations of special master); *In re "Agent Orange" Prod. Liab. Litig.,* 99 F.R.D. 645 (E.D.N.Y.1983) (lifting prior protective order applying to government documents obtained during discovery); *In re "Agent Orange" Prod. Liab. Litig.,* 100 F.R.D. 718 (E.D.N.Y.) (certifying Rule 23(b)(3) and Rule 23(b)(1)(B) classes), *appeal denied,* 100 F.R.D. 735 (E.D.N.Y. 1983), *mandamus denied,* 725 F.2d 858 (2d Cir.1984), *aff'd,* 818 F.2d 145 (2d Cir.1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *In re "Agent Orange" Prod. Liab. Litig.,* 100 F.R.D. 778 (E.D.N.Y.1984) (denying motion to implead

suppliers of chemical components); *In re "Agent Orange" Prod. Liab. Litig.,* 580 F.Supp. 690 (E.D.N.Y.1984) (finding national consensus law on issues of liability, government contractor defense and punitive damages); *In re "Agent Orange" Prod. Liab. Litig.,* 580 F.Supp. 1242 (E.D.N.Y.) (reinstating third-party plaintiffs' claim for indemnity against government with respect to claims of veterans' wives and children), *mandamus denied,* 733 F.2d 10 (2d Cir.), *appeal denied,* 745 F.2d 161 (2d Cir.), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984); *In re "Agent Orange" Prod. Liab. Litig.,* 101 F.R.D. 97 (E.D.N.Y.1984) (ordering *in camera* disclosure of names of scientists deleted from government report); *In re "Agent Orange" Prod. Liab. Litig.,* 597 F.Supp. 740 (E.D.N.Y.1984) (approving settlement of class action subject to fairness hearings); *In re "Agent Orange" Prod. Liab. Litig.,* 603 F.Supp. 239 (E.D.N.Y. 1985) (dismissing claims of veterans' wives and children against government), *aff'd in part, vacated in part,* 818 F.2d 201 (2d Cir.1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *In re "Agent Orange" Prod. Liab. Litig.,* 104 F.R.D. 559 (E.D.N.Y.1985) (modifying protective orders); *In re "Agent Orange" Prod. Liab. Litig.,* 105 F.R.D. 577 (E.D.N.Y.1985) (affirming with modification magistrate's order that defendants in two non-settled cases produce deponents); *In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1221 (E.D.N.Y.1985) (dismissing defendants' claim for indemnity from government for settlement payments to veterans' families), *aff'd,* 818 F.2d 204 (2d Cir.1987); *In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1223 (E.D.N.Y. 1985) (ruling as to admissibility of opt-out plaintiffs' scientific evidence and expert testimony and granting summary judgment in favor of defendants for plaintiffs' failure to establish causation), *aff'd,* 818 F.2d 187 (2d Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988); *In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1267 (E.D.N.Y.1985) (same), *aff'd,* 818 F.2d 187 (2d Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932

(1988); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1285 (E.D.N.Y.1985) (dismissing action brought by Hawaiian civilians), *aff'd in part, vacated in part*, 818 F.2d 210 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1290 (E.D.N.Y.1985) (dismissing claim of civilian physician for failure to demonstrate exposure to herbicides), *aff'd in part, vacated in part*, 818 F.2d 210 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296 (E.D.N.Y.1985) (determining class-action plaintiffs' attorney fees and reaffirming settlement); *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir. 1987); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1396 (E.D.N.Y.1985) (establishing plan for disbursement of settlement fund pending appeals), *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir.1987); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1452 (E.D.N.Y.1985) (denying motion to set aside attorney fee-sharing arrangement), *rev'd in part*, 818 F.2d 216 (2d Cir.), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987); *In re "Agent Orange" Prod. Liab. Litig.*, 618 F.Supp. 623 (E.D.N.Y.1985) (approving settlement of class action and dismissing with prejudice claims of class members); *In re "Agent Orange" Prod. Liab. Litig.*, 618 F.Supp. 625 (E.D.N.Y.1985) (approving plan for Australia and New Zealand); *In re "Agent Orange" Prod. Liab. Litig.*, 787 F.2d 822 (2d Cir.1986) (dismissing claims of non-class plaintiffs against defendant not named in complaints); *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14 (2d Cir.1986) (denying motion to disqualify plaintiffs' attorneys from appealing settlement); *In re "Agent Orange" Prod. Liab. Litig.*, 804 F.2d 19 (2d Cir.1986) (denying repeal of stay on settlement funds pending appeal); *In re "Agent Orange" Prod. Liab. Litig.*, 689 F.Supp. 1250 (E.D.N.Y. 1988) (modifying class assistance program as required by 818 F.2d 179 and granting opt-out plaintiffs opportunity to opt into class for purposes of benefiting from settlement fund).

Narratives of these events are in print. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 148–61 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988). Nevertheless, a brief recapitulation of certain aspects of this history is desirable as background to the current phase of the *Agent Orange* litigation saga.

While in the service of their country, hundreds of thousands of military service personnel were exposed to the defoliant Agent Orange, which contained trace elements of dioxin. Lawsuits on behalf of veterans proliferated throughout the country starting in 1978. The suits—as much a demand for compensation as a political protest of the treatment of Vietnam veterans by the government and public at large—were brought against the various manufacturers of defoliants, who in turn impleaded the federal government. Between two and three million members of the armed forces who served in or near Vietnam as well as their families were potential plaintiffs.

In 1979, the Judicial Panel on Multidistrict Litigation transferred as MDL 381 over 600 cases involving about 15,000 plaintiffs to the Eastern District of New York for coordinated and consolidated pretrial proceedings. In the initial proceedings of MDL 381, the court denied defendants' motion to dismiss for lack of subject matter jurisdiction because the complaint raised questions of federal common law. *See* 506 F.Supp. at 737. When the Second Circuit Court of Appeals reversed this ruling, *see In re "Agent Orange" Prod. Liab. Litig.*, 635 F.2d 987 (2d Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981), the litigation became a suit predicated on diversity jurisdiction.

In December of 1980, the court granted the federal government's motion to be dismissed as a third-party defendant on the basis of sovereign immunity. 506 F.Supp. at 762. It also denied plaintiffs' motion to create a "limited fund" class action under Federal Rule of Civil Procedure 23(b)(1)(B), and instead indicated that it planned to certify a "common question" class under Rule 23(b)(3). *Id.* In addition, the court

denied the defendants' motion to dismiss on the ground that the production of defoliants was ordered by, and met the specifications of, the federal government (the "military contractor defense"). The court indicated the defendants could later attempt to prove the applicability of the defense. *Id.* Following discovery, the court granted, but did not enter, summary judgment on the military contractor defense for some but not all defendants. 565 F.Supp. at 1263.

In December of 1983, the court certified two classes of plaintiffs and scheduled a trial to commence in May of 1984. A Rule 23(b)(3) class with opt-out rights was created to try the fundamental common question of the causal relationship between dioxin and plaintiffs' injuries. 100 F.R.D. at 718. In addition, a Rule 23(b)(1)(B) limited fund class without opt-out rights was created to cover plaintiffs' punitive damage claims. *Id.* The 23(b)(3) class was defined as

> those persons who were in the United States, New Zealand or Australian Armed Forces at any time from 1961 to 1972 who were injured while in or near Vietnam by exposure to Agent Orange or other phenoxy herbicides.... The class also includes spouses, parents, and children of the veterans born before January 1, 1984, directly or derivatively injured as a result of the exposure.

*Id.* at 729. Pursuant to Rule 23(c)(2), the court ordered plaintiffs' counsel to notify class members by mail where possible, and by radio, television, magazine, and newspaper announcements throughout this country, Australia, and New Zealand. The mailings and announcements informed class members that they would be bound by the class action unless they forwarded a written request for exclusion to the clerk of the court by May 1, 1984. *Id.* at 732. Fewer than 2,500 servicepersons filed opt-out requests. *See* 597 F.Supp. at 756.

B. *The Settlement Agreement*

On May 7, 1984, a tentative settlement was forged. According to its terms, the defendants agreed to pay the class $180 million in final settlement of all claims arising out of exposure to Agent Orange then or in the future. Concerned with the potential for new actions and recognizing the need for finality, the Settlement Agreement expressly stated that "[t]he class specifically includes persons who have not yet manifested injury." 597 F.Supp. at 865.

The Settlement Agreement provided that the $180 million be paid into a Settlement Fund to be established, maintained, and administered by the court. The agreement also required the court to retain jurisdiction over the Settlement Fund pending its final disposition. *Id.* at 866. The exclusive remedy provided for all class members was a claim against the Settlement Fund. Under the Settlement Agreement, class members were forever barred from instituting or maintaining any action against defendants arising out of or relating to, or in the future arising out of or relating to, exposure to Agent Orange. The Settlement set aside $10 million of the $180 million to indemnify the defendants from any judgments obtained in state court actions by members of the class alleging harm caused by exposure to Agent Orange in or near Vietnam. Any part of the indemnity fund not used reverts to the benefit of the class members.

The Settlement Agreement was preliminarily approved on January 7, 1985. *See id.* at 862. Notice of the proposed settlement was given to the class. Following eleven days of fairness hearings in five cities, the court granted final approval of the Settlement Agreement on June 18, 1985. 611 F.Supp. at 1347. Subsequently, the court issued an Order and Final Judgment of Dismissal which: (1) dismissed with prejudice all claims by class members; (2) barred all class members from instituting or maintaining any action against defendants arising out of the subject matter of the class action; and (3) retained the court's jurisdiction over the class action for the purpose of maintaining, administering, and distributing the Settlement Fund. *See* 618 F.Supp. at 624.

C. *Dismissal of Opt–Out Claims*

After the court preliminarily approved the Settlement Agreement, most of the

original 2,500 opt-outs chose to opt back into the class. Two hundred and eighty-two servicepersons did not. *See* 611 F.Supp. at 1230. Their claims were embodied in seventeen different cases.

Summary judgment was granted against each opt-out plaintiff on the grounds, *inter alia,* that none could prove by the probability demanded in tort litigation that his or her ailment was caused by Agent Orange, *see* 611 F.Supp. at 1260–63; 611 F.Supp. at 1284–85, and that all the claims were barred by the military contractor defense. *See* 611 F.Supp. at 1263–64; 611 F.Supp. at 1285.

### D. *Appeals*

Various district court rulings including the final judgment were appealed to the Court of Appeals for the Second Circuit. The rulings included orders certifying the class action, approving the Settlement Agreement, outlining the distribution plan, awarding counsel fees, granting summary judgment against the opt-out claimants, dismissing untimely claims, and dismissing all claims of class members who objected to the Settlement Agreement. Specifically assigned as errors were the inclusion in the class definition of persons with latent or "after-manifesting" injuries, the sufficiency of the notices of class certification and settlement of the action, the adequacy of the Settlement Fund, and the propriety of the distribution plan.

In nine unanimous opinions dated April 21, 1987, the Court of Appeals disposed of all of the numerous individual appeals except those from the order of the district court providing for public access to documents sealed from public view during discovery. Petitions for rehearing were denied. The Court of Appeals approved the settlement and multiple petitions to the United States Supreme Court were denied.

Specifically, the Court of Appeals affirmed the adequacy of notice, the adequacy of the representation given the absent class members, the fairness of the settlement, and the dismissal of the opt-out plaintiffs' claims. *See* 818 F.2d 145 (affirming class certification, adequacy of notice, to class, and approving settlement); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 179 (2d Cir.1987) (approving Veteran Payment Program but rejecting Class Assistance Program as an organization operated independently of the court); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 187 (2d Cir.1987) (affirming summary judgment against opt-out plaintiffs), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 194 (2d Cir. 1987) (affirming dismissal of Federal Tort Claims Act claims of servicepersons and their relatives); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 201 (2d Cir. 1987) (affirming dismissal of "direct" claims against the United States brought by wives and children of servicepersons), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 204 (affirming dismissal of manufacturers' claim for indemnity against United States for settlement payments); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 210 (2d Cir.1987) (affirming dismissals of Hawaiian civilians' actions), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 216 (2d Cir.) (rejecting plaintiff class attorneys' fee-sharing agreement and reinstating in part fee award determination of district court), *cert. denied,* 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226 (2d Cir.1987) (affirming district court's calculations of attorney fees but reinstating certain fees against which district court had offset discovery costs).

## II. OPERATION OF THE SETTLEMENT FUND

The court outlined its proposed plan for the use of the Settlement Fund in May of 1985. 611 F.Supp. at 1396. On July 5, 1988, the court announced the final plan for distribution. 689 F.Supp. at 1250. At that time, the fund had approximately $240 million in assets. Some $13 million was used for attorney fees. Five million dollars was set aside for the benefit of veterans from

Australia and New Zealand. $170 million was allocated to the Agent Orange Veteran Payment Program designed to compensate disabled veterans and their survivors. The Payment Program compensates for the death or disability of any class member that occurs on or before December 31, 1994 or until the Plan's funds run out, whichever comes first.

Another $42 million was designated to the Agent Orange Class Assistance Program. It distributes funds in the form of grants to organizations that provide services to children with birth defects and their families and assistance to Vietnam veterans who are not otherwise able to obtain needed assistance. The $10 million indemnity fund will be added to the fund for the Class Assistance Program if it is not used for state litigation prior to 1994.

## A. *Veteran Payment Program*

In light of the dismissal of the claims of the opt-out plaintiffs, the court ruled, as a matter of equity, that any person who had opted out of the class action settlement was automatically eligible to participate in the Payment Program unless he or she "opted-out" a second time by January 1, 1989. *See* 689 F.Supp. at 1262. Initially, the court required a veteran or his or her survivor seeking compensation from the Payment Program to request an Application Kit within 120 days of learning of the death or injury or by January 1, 1989, whichever was later. The date was extended and then abolished altogether as a condition for sharing in the fund. All fully completed applications received prior to the termination of the Program will be considered timely. Berman, *The Agent Orange Veteran Payment Program,* 53 Law & Contemp. Probs. 49 (1990), provides an account of the basic operation of the Program.

As of September 30, 1991, the Payment Program has received applications from more than fifty thousand persons. Approximately 80% of these applications were filed by veterans seeking disability payments; the other 20% were filed by surviving family members. The following chart outlines the status of the applications:

| | |
|---|---:|
| Number approved and paid | 26,727 |
| Number denied | 19,882 |
| Number pending | 1,967 |
| Number inactive | 5,191 |
| Total | 53,767 |

*See Report of the Special Master on the Distribution of the Agent Orange Settlement Fund,* Third Annual Report (October, 1991). As of September 30, 1991, a total of $86,255,351 had been disbursed to eligible applicants under the Payment Program.

About 80% of the claims submitted to the Payment Program are disability claims. Of these, 12,091 (roughly 28%) resulted from disabilities occurring after May 7, 1984 (the settlement date). 9,350 of those claims have been approved for payment. The remaining 20% of filed claims are for survivor payments. Of these, 6,350 (about 53%) are for deaths occurring after May 7, 1984. 4,242 of these claims have been approved. *See Third Annual Report, supra.*

Applicants who disagree with the disposition of their applications may file an appeal with the court-appointed Special Master for Appeals. As of September 19, 1991, 10,396 appeals had been filed and a total of 9,816 decisions had been rendered. Of the decisions on appeal, 6,890 affirmed the determination below and 2,926 overruled or modified the decision. For each case, the court's approval is required before the Special Master's determination becomes final.

In overseeing the Payment Program the court has received thousands of letters and telephone inquiries from veterans or their families. Many seek information about the processing of their claims; others request specific relief such as an advance payment because of hardship or necessity. The court responds to each inquiry by either contacting the disbursing agent for the Agent Orange Payment Program, the Special Master for Appeals, or, where appropriate, granting the requested relief. As mentioned above, the court has passed upon almost 10,000 appeals in individual cases. It receives frequent reports from the bodies administering the program and its financial advisors. All disbursements

from investment funds are approved by the court. It is also in frequent contact with Special Master Kenneth Feinberg about such matters as the successful legislative and administrative decisions to exempt settlement funds from taxation and from liens of the Department of Veterans Affairs and others. The court has also consulted with the Advisory Board to the Payment Program, which is composed of veterans Albert S. Dandridge, III, Esq., Donna–Marie Boulay, Esq., Charles T. Hagel, Vincent Martin, and John McElrath.

## B. *Class Assistance Program*

The Class Assistance Program provides services to large numbers of possibly exposed veterans and their families with special emphasis given to children with birth defects. The Program is administered by the court with the advice of Executive Director Dennis K. Rhoades, Deputy Director Michael Leveck, and a board of unpaid Vietnam veteran advisors currently consisting of Rev. Robert Certain, Steven Champlin, Ronald Gardner, Charles T. Hagel, Mary Lou Keener, Gary E. May, Frank McCarthy, Hon. Matthew Railey, Dr. Oscar Salvatierra, and Solomon B. Watson, IV.

Continuing supervisory responsibility requires the court to review each of the proposed grants. The court also attends regular meetings with the Executive Director and advisory board. The Executive Director reports to, and requests advice and authority from, the court in specific matters in frequent phone and face-to-face consultations. The court also has physically inspected the operation of a number of the institutions funded by the program and meets with the leaders of many more of these organizations.

Since its inception, the Class Assistance Program has awarded 134 grants worth a total of almost $24 million. Of these grants, 71 are active, providing $13.5 million in services to veterans and their families in 46 states. *Third Annual Report of the Agent Orange Class Assistance Program* (October 3, 1991). Recipients include local and national Vietnam veterans' groups, agencies serving adults and children with disabilities, and agencies providing family counseling. *See* Appendix 1. The various programs in these areas provide services ranging from counseling and other direct assistance to help in obtaining services and benefits from government and private providers for which veterans and their families are eligible. *See* Appendix 2. All organizations that receive funds file quarterly reports and undergo annual evaluations both to assist them in achieving their goals and to ensure that grant money is being used effectively. The Class Assistance Program estimates that, in the last three years, grantee-organizations have served about 46,000 veterans and family members. *See* Appendix 3.

In the summer of 1991, students from Touro Law School, volunteers, and Program staff examined some 250,000 claims files of the court and obtained the names of about 75,000 birth-disabled children of Vietnam veterans who may have been exposed to Agent Orange. Their families will be contacted in an attempt to assist them with the network of social and medical agencies cooperating with the Class Assistance Program.

The staff of the Class Assistance Program, working with state bodies, veterans' groups, academic institutions, and national and local social service institutions, also conducts training programs. A major thrust of these programs is to educate agencies and workers in the helping professions on the needs of veterans as family members.

## III. THE PRESENT ACTIONS

The two actions in which motions to remand are pending are, in effect, a direct challenge to the validity of the settlement and the programs now financed by the Settlement Fund. Those plaintiffs who are class members have now sued the same chemical companies who were defendants in the original *Agent Orange* litigation on the same grounds and for the same relief as was originally sought and compromised in the class action. If plaintiffs are successful, they will automatically reduce the sums available for other class members,

since the terms of the settlement set aside $10 million for indemnification of the defendants against suits of this kind.

In starkest terms, the cases present the question of whether members of a class whose action was brought and is still pending in federal court can circumvent the effect of a federal judgment by bringing new actions in a state court relying exclusively on state law. The need to protect other class members, the importance of maintaining the class action as viable litigation device, and the interest of all litigants in the finality of settlements require that the question be answered in the negative.

### A. *Hartman I*

In June 1988, *Hartman v. Diamond Shamrock Chemical Co. (Hartman I)* was commenced in Texas state court. The plaintiffs were Ronald Hartman and his wife and children. Mr. Hartman is a Vietnam veteran who was diagnosed in 1988 as having non-Hodgkins lymphoma. His children, Jeffrey Alan Hartman and Angela Marie Hartman, both suffer from birth defects. Katherina Hartman, his wife, claims emotional injury arising out of her husband's and children's conditions.

The Hartman complaint was the same in all substantive respects as the class action complaint in *Agent Orange*. Plaintiffs sought compensatory and punitive damages on behalf of a class of veterans exposed to Agent Orange in Vietnam who allegedly manifested injuries after the May 7, 1984 settlement date or who discovered their injuries after that date. The defendants were the same chemical companies sued in the *Agent Orange* class action. The *Hartman I* action was filed by Benton Musslewhite, Esq., an attorney who participated in the representation of the *Agent Orange* class and signed the Settlement Agreement.

*Hartman I* was removed to the United States District Court for the Eastern District of Texas. The case was transferred to this court by the MDL panel on February 1, 1989. *See In re "Agent Orange" Prod. Liab. Litig.*, MDL-381 (J.P.M.D.L. Feb. 1, 1989) (unpublished order). At plaintiffs' request, this court dismissed the *Hartman I* action without prejudice on September 25, 1989.

### B. *Ivy and Hartman II*

In May 1989, a group of 34 plaintiffs commenced *Ivy v. Diamond Shamrock Chemicals Co.* in Texas state court. Like the *Hartman I* plaintiffs, most of the plaintiffs in *Ivy* assert that they suffered injuries as a result of exposure to Agent Orange during service in the Armed Forces in Vietnam and that their injuries did not manifest themselves or were not discovered until after May 7, 1984. Charles Jardon, Gary Thomas, James Kent, Earl Thompson, James Donald Deloatch, and Emile Annibolli claim injury from exposure to Agent Orange during military service in Vietnam from 1963 to 1971. Family members include Shirley Ivy, Verda Wilson, Shirley Zalewaski, Dawn Marie Inman, Peggy Sands, Ursula Margot Parry, and Laura Jenkins, who bring actions on behalf of themselves and the estates of deceased veterans Donald Ivy, Isaiah Wilson, Jr., Yen Zalewaski, Bobby Joe Inman, Martin Sands, James D. Parry, Sr., and Eddie Jenkins. Toni K. Jardon, Charles Jardon, Jr., Robin Jardon, Warren Jardon, Sharon Jardon, Mary Lee Thomas, Emma Kent, Judy L. Thompson, and Joyce Deloatch also sue as family members. All of these plaintiffs fall within the class as defined in the original *Agent Orange* litigation.

Two of the claimants in the *Ivy* action allege injuries from exposure to Agent Orange while acting in a civilian capacity. Charles Brown and Clarence White (whose estate is being represented by James White) served as civilian employees in Vietnam and claim to have been injured from exposure to Agent Orange. Since these civilian plaintiffs did not serve in a military capacity, they are not members of the class bound by the 1984 settlement and order.

There is some confusion as to representation of some of the *Ivy* plaintiffs. Robert Hager, Esq. only claims to represent Donald Ivy, Shirley Ivy, James Deloatch, and Joyce Deloatch. The other plaintiffs in the

*Ivy* action are represented by counsel in Texas who did not appear in this court.

Shirley Ivy is attempting to be a class representative of a class of veterans and survivors who manifested or discovered injury after the May 7, 1984 opt-out deadline. Ronald Hartman is attempting to do the same in *Hartman II.*

James Deloatch, Joyce Deloatch, Tamara Deloatch, James L. Kent, Sr., Emma Kent, Charles E. Brown, Gary F. Thomas, and Mary Lou Thomas purported to opt out of the *Agent Orange* class by filing notices with the Clerk of the Court in August of 1988. Shirley Ivy also filed an opt-out notice on behalf of herself and her deceased husband, Donald Ivy, with the Clerk of the Court on August 25, 1991.

Some *Ivy* plaintiffs have availed themselves of the Veteran Payment Program. Shirley Zalewaski apparently filed a notice purporting to opt out of the class but later requested an application for the Payment Program. In March 1989, Verda Wilson applied for a survivor payment from the Agent Orange Veteran Payment Program on behalf of her late husband, Isaiah Wilson, Jr. In September she was denied relief but that decision was overruled by the Special Master for Appeals. On January 15, 1991, the court approved payment to her of a survivor award. She received $3,400 in March of this year. In May 1990 Laura Jenkins also applied for survivor payments on behalf of her late husband, Eddie Jenkins. She was approved for payment and received $2,040 in February, 1991. Plaintiffs Ursula Margot Parry and Shirley Zalewaski have applied for payment from the Settlement Fund and have been sent application kits which they have not yet returned.

The *Ivy* complaint, which seeks compensatory and punitive damages for "after-manifested" injuries, expressly disclaims reliance on federal law. Defendants nevertheless removed the *Ivy* action to federal court on federal question grounds.

In April 1990, a second action was filed by the *Hartman I* plaintiffs in Texas state court. With one exception, the complaint in *Hartman II* is essentially identical to *Hartman I;* like the complaint in *Ivy*, it disavows reliance on any right or recovery under federal law. *Hartman II* was also removed to federal court. While the *Ivy* and *Hartman II* actions have not been consolidated, the plaintiffs in both actions will be referred to collectively as "plaintiffs."

In both the *Ivy* and *Hartman II* notices of removal, the defendants offered two grounds for federal subject matter jurisdiction. First, the court was said to have jurisdiction over this action "because most of the plaintiffs' claims have already been asserted and adjudicated in federal court and plaintiffs' petition is merely an artful pleading to avoid federal jurisdiction." Second, the court's jurisdiction was invoked "pursuant to 28 U.S.C. § 1331 based on the doctrine of complete federal preemption."

On January 31, 1990, the plaintiffs petitioned the United States Court of Appeals for the Second Circuit for a writ of mandamus directing the MDL Panel to vacate the transfer order for lack of federal subject matter jurisdiction. The petition was denied on March 28, 1990. *See In re Ivy*, 901 F.2d 7 (2d Cir.1990). The Court of Appeals directed that the issue of subject matter jurisdiction be considered in the first instance by the transferee court. *Id.*

In October 1990, plaintiffs moved in this court for an order remanding both actions to the Texas state courts on the ground that federal subject matter jurisdiction was lacking. In December 1990, defendants moved under the All–Writs Act, 28 U.S.C. § 1651, for an injunction prohibiting the plaintiffs, their attorneys and certain non-parties from prosecuting *Ivy* and *Hartman II* and from commencing any new actions compromised by the Settlement Agreement.

A second mandamus petition that sought to prevent this court from ruling on the merits of the case was denied without opinion in December 1990. *In re Ivy*, No. 90–3065 (2d Cir. Dec. 12, 1990). A third mandamus petition seeking relief similar to the second petition was denied in March of 1991. *In re Ivy*, No. 91–3011 (2d Cir. Mar. 5, 1991).

Oral argument on the motion to remand was heard on March 6, 1991. Given the complexity of the legal issues and the questions posed by the court, time for further briefing was requested by the defendants. The motion to remand and any additional dispositive motions were rescheduled to be heard on May 6, 1991.

Prior to the May 6 return date, defendants moved to dismiss plaintiffs' claims. Defendants further moved for leave to amend their notice of removal to add 28 U.S.C. § 1442(a)(1) (removal of cases involving federal officer or persons acting under such officer) as a basis for jurisdiction. Plaintiff Hartman moved for an order consolidating the *Ivy* and *Hartman II* actions for trial purposes.

On May 6, 1991 the court heard oral argument on the following motions:

1. Plaintiffs' motion to remand to the Texas state courts.

2. Defendants' motion under the All–Writs Act for an injunction prohibiting further state court litigation.

3. Defendants' motion to dismiss.

4. Defendants' motion for leave to amend the notice of removal to add an additional basis for jurisdiction.

At the hearing, the parties requested additional time for supplemental briefing. The court gave the plaintiffs until July 6, 1991 and the defendants thirty days from that date. No further argument was scheduled. Plaintiffs requested and received a two-month adjournment to September 6. A further application for another 30 day extension was made by the plaintiff on August 28, 1991; it was denied in view of the desirability of a final decision.

Defendants most recently requested still more time to respond to plaintiffs' extensive scientific submissions. The court granted thirty days to both parties to supplement their scientific documentation. While the court believes the scientific contentions on both sides are irrelevant, and, if relevant, not dispositive, the parties desired to make a record for purposes of appeal. The court saw no reason to deny them that opportunity.

## IV. LAW

### A. *Subject Matter Jurisdiction*

■■■ The sole basis advanced to justify remand is the alleged lack of federal subject matter jurisdiction. Since diversity jurisdiction is lacking and the complaints disavow reliance on federal law, plaintiffs maintain that the cases belong in state court. With respect to all the plaintiffs who fall within the definition of the class in the *Agent Orange* litigation, this position is without merit. This court retained jurisdiction over the class action and has authority to ensure that its prior orders and the Settlement Agreement are enforced. If an independent basis for jurisdiction were necessary, the complaint itself calls into question federal law by undermining a final federal class action judgment.

The two civilian plaintiffs in *Ivy* are, however, in a separate category. They are not members of the class and are therefore not bound by the Settlement Agreement. Their cases are severed from the claims of the remaining plaintiffs. The question of the court's jurisdiction over these plaintiffs will be addressed in a separate memorandum. For the remainder of this opinion, the term "plaintiffs" refers only to the veteran plaintiffs.

### 1. Adequacy of Notice of Removal

■■■ Defendants' removal was proper because the court retains jurisdiction over the Settlement Agreement and because it must enforce its bar on subsequent suits by class members against the defendants. In addition, plaintiffs' state law complaint is an artfully pleaded attempt to avoid a prior binding federal judgment. Defendants' removal notices in *Ivy* and *Hartman II* expressly identify only the last of these grounds. Although the notices are somewhat less clear than they might have been as to the other bases of subject matter jurisdiction, this court is charged with the duty, consistent with the general rules of notice pleading, to construe removal notices, like all pleadings, liberally and in accord with substantial justice. *Rachel v. Georgia,* 342 F.2d 336, 340 (5th Cir.1965), *aff'd,* 384 U.S. 780, 86 S.Ct. 1783, 16

L.Ed.2d 925 (1966); *Harlem River Produce Co. v. Aetna Cas. & Sur. Co.*, 257 F.Supp. 160, 163–64 (S.D.N.Y.1965); *cf. Curley v. Brignoli, Curley & Roberts Associates*, 915 F.2d 81, 85 (2d Cir.1990) (court will look beyond face of complaint to establish diversity jurisdiction), *cert. denied*, — U.S. —, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991). Jurisdiction on grounds not explicitly stated in the notice of removal is appropriate where the grounds are implicit in the situation. *See Walker v. Gibson*, 604 F.Supp. 916, 919 (N.D.Ill.1985); *Harper v. National Flood Insurs. Ass'n*, 494 F.Supp. 234, 236 (M.D.Pa.1980).

Defendants' notices properly stated one adequate ground for removal: plaintiffs' artful pleading to avoid a final federal judgment. Defendants' claims that plaintiffs' actions are removable under the doctrine of federal preemption and have already been asserted in federal court in a pending federal action, taken in context, support the additional grounds discussed below.

### 2. Court's Retained Jurisdiction

■ Plaintiffs are members of the *Agent Orange* class. The veterans all served in Vietnam between 1961 and 1972 and claim injuries from exposure to the herbicide. Family member claimants also fall within the plain terms of the class. For all of these plaintiffs, the Settlement Agreement compromised their claims. By bringing new actions in state court, the plaintiffs seek to avoid the effect of the Settlement Agreement and the judgment issued by this court.

■ A federal court retains the power to enforce and to consider challenges to settlements entered into in cases originally filed with the court. *See Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 932 (3d Cir.1984), *cert. denied*, 469 U.S. 1190, 105 S.Ct. 962, 83 L.Ed.2d 968 (1985); *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir.1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976). If there is no independent basis for jurisdiction, absent some special need of the parties, the settlement must have been "incorporated into an order of the court," *Fair-*

*fax Countywide Citizens Ass'n v. Fairfax County*, 571 F.2d 1299, 1303 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), or there must have been a "deliberate retention of jurisdiction, as by issuing an injunction or by stating that jurisdiction is retained for a particular purpose." *McCall–Bey v. Franzen*, 777 F.2d 1178, 1190 (7th Cir.1985); *see United SteelWorkers v. Libby, McNeil & Libby*, 895 F.2d 421, 423 (7th Cir.1990); *cf. Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.) ("Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders the prior controversy academic."), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976).

By any standard this court has jurisdiction over both removed actions: a state suit will reduce the funds available to the class, providing a special need for exercise of federal jurisdiction; the settlement now sought to be circumvented by plaintiffs was embodied in a judgment of this court after full fairness hearings; and, since the class action is still pending in this court, jurisdiction was deliberately retained and is being exercised.

The practical effect of the new actions will be harmful to other class members. Any judgments in state court against the defendants will be paid from the indemnity fund. When parties to a federal action are being adversely affected, the court may not allow its judgment and orders to be flouted. *See Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (court has duty to enforce settlement it approved). This is especially true in class actions. "In a class action, the district court has a duty to see that any settlement it approves is completed, and not merely to approve a promise...." *In re Corrugated Container Antitrust Litig.*, 752 F.2d 137, 141 (5th Cir.), *cert. denied*, 473 U.S. 911, 105 S.Ct. 3536, 87 L.Ed.2d 660 (1985).

The Settlement Agreement was incorporated by the court in the decision upholding its fairness, subject to hearings on attorney

fees and consideration of plans for distribution. 597 F.Supp. at 862. The Settlement Agreement was also approved "according to its terms" in the court's order and final judgment. 618 F.Supp. at 624–25. In its final order and judgment of dismissal, the court explicitly retained jurisdiction "for the limited purposes of maintaining, administering and distributing the Settlement Fund, pending its final disposition." 618 F.Supp. at 625. That continuing mandate was broadened when the Court of Appeals for the Second Circuit also directed the court to maintain jurisdiction over the Class Assistance Program and to supervise and manage the distribution of the entire Settlement Fund. 818 F.2d at 185–86.

The intimate involvement of the court with the administration of both the Payment Program and the Class Assistance Program evidences the court's continuing jurisdiction over the class. On a daily basis, the court responds to inquiries of class members. When necessary, it assists them in obtaining compensation from the Settlement Fund. It continues to review the thousands of decisions of the Special Master of Appeals. Each grant developed by the Class Assistance Program is examined and must be approved by the court. Current scientific literature and legislative action are reviewed and made part of the court file. The number of entries on the case docket has grown from approximately 8,000 at the time of settlement to over 13,000 today. These activities are more than sufficient to support a finding that the court retained jurisdiction.

Since the court has retained jurisdiction over the class action it has authority to ensure that the Settlement Agreement it previously approved is enforced according to its terms. Under the circumstances, a new and independent basis for subject matter jurisdiction is not necessary for the court to rule on the merits of plaintiffs' claims. The claims are a challenge to the integrity of the Settlement Agreement and the authority of this court. This court has the power and the obligation to protect and effectuate its orders and final judgments in the *Agent Orange* litigation.

### 3. Court's Power to Enforce Its Injunction

 As part of the Order and Final Judgment of Dismissal, the court enjoined all class members from commencing any action arising out of or related to exposure to Agent Orange. 618 F.Supp. at 624. The plaintiffs are all members of the class barred from instituting new actions against the settling defendants.

A federal court, as a court of equity, has the authority to enforce its injunction "with or without an explicit reservation of jurisdiction...." *McCall–Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir.1985). "The mandate of an injunction issued by a federal district court runs nationwide, and '[v]iolation of an injunctive order is cognizable in the court which issued the injunction regardless of where the violation occurred.'" *Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986) (citation omitted) (quoting *Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir.1963)).

The fact that the judgment is not labeled an injunction is irrelevant. "The determination of whether an order is an injunction depends upon the substantial effect of the order rather than its terminology." *In re Federal Skywalk Cases*, 680 F.2d 1175, 1180 (8th Cir.1980), *cert. denied*, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982). By barring "[e]ach and every plaintiff and member of the ... class ... from instituting or maintaining any action against any of the defendants," 618 F.Supp. at 624, the court effectively issued an injunction which bars the current actions.

The plaintiffs are all subject to the court's bar against instituting new actions against these defendants. Plaintiffs have violated the court's order by bringing a new action in another forum.

### 4. Federal Nature of Plaintiffs' Claims

 The plaintiff is normally the master of its complaint, and a federal question will not be found if it is not in the complaint. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Nevertheless, this court must "determine whether the real nature of the

claim is federal, regardless of plaintiff's characterization." *Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3722, at 268–75), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). An action relying on state law is essentially federal in nature where a plaintiff has had its rights determined by a federal court and the subsequent state action is an attempt to avoid the prior federal judgment. *See Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 397 & n. 2, 101 S.Ct. 2424, 2427 & n. 2, 69 L.Ed.2d 103 (1981).

In *Moitie* plaintiffs brought a federal antitrust action and the claim was dismissed on the merits. Plaintiffs then used the same facts to assert a state law claim against the same defendants. The action was removed to federal court and dismissed on *res judicata* grounds. While there was no federal claim apparent on the face of the complaint, the Supreme Court endorsed the lower courts' finding that the claim was considered "federal in nature" because it was merely an "artful pleading" to avoid the prior federal judgment. *Id.*

The Second Circuit Court of Appeals in clarifying *Moitie* has identified two criteria for determining when a state action will be considered federal in nature. First, the elements of the claim must be "virtually identical" to those in the prior federal action. *Sarkisian,* 794 F.2d at 760. Second, the plaintiff must have chosen the federal forum in the earlier litigation. *Id.* The second element is critical in rendering the state claim "federal" since it implies that "plaintiff's choice of a state forum is motivated by the desire to evade the consequences of prior federal litigation." *Bowlus v. Alexander & Alexander Servs. Inc.,* 659 F.Supp. 914, 918–19 (S.D.N.Y.1987); *see Sarkisian,* 794 F.2d at 760.

Both of the *Sarkisian* criteria are present here. Plaintiffs are members of the *Agent Orange* class action. Although plaintiffs affirmatively disclaim reliance on federal law and assert state law as the sole basis for relief, these claims are identical to the claims raised by the class action complaint. The class plaintiffs chose the federal forum to manage the class action. These new plaintiffs cannot now "abuse the dual court system by filing in state court a second lawsuit...." *Sarkisian,* 794 F.2d at 761.

Plaintiffs object to the application of *Sarkisian* for two reasons. First, they argue that the rule of that case controls only if the first federal court litigation is brought under federal question rather than diversity jurisdiction. Since the *Agent Orange* litigation was a diversity action, plaintiffs contend that it does not fall within the *Sarkisian* rule. While it is true that *Sarkisian* itself involved a prior federal question claim, there is no indication that the Court of Appeals intended to so limit its reach. Such a limit would be unjustifiable in light of the policy behind the *Sarkisian* doctrine of preventing "double-dipping." Surely it is a worse abuse to litigate *exactly* the same state law claims twice than it is to litigate parallel, though perhaps not identical, federal and state law claims.

Second, the plaintiffs contend that they never "chose" to proceed in the earlier litigation in this court and therefore cannot be said to be seeking avoidance of the Settlement. Since plaintiffs allege that they did not gain definitive knowledge of their membership in the *Agent Orange* class until their injuries manifested after the 1984 opt-out deadline, they argue that, as individuals, they did not actively choose to proceed. But the concept of the class action is that it is a representative litigation. If plaintiffs did not choose to litigate, their class representatives chose on their behalf.

In short, the plaintiffs' current actions challenge the viability of Rule 23 of the Federal Rules of Civil Procedure and of class action settlements. If the plaintiffs, as class members, are allowed to undermine a settlement agreement and set aside a federal court's judgment through new state court suits, it is hard to imagine any future defendant in a federal court class action considering settlement since the agreement would always be open to attack by class members in state court.

Because plaintiffs' actions are in reality artful pleadings to avoid a prior federal court decision, this court has jurisdiction over plaintiffs' removed actions.

### 5. Court's Power to Order Removal

 The All–Writs Act, 28 U.S.C. § 1651(a), authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions...." *In re Baldwin–United Corp.*, 770 F.2d 328, 335 (2d Cir.1985); *see In re Joint E. & S. Dists. Asbestos Litig.*, 120 B.R. 648, 656 (E. & S.D.N.Y.1990); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E. & S.D.N.Y.1990). The Act authorizes federal courts to exercise jurisdiction over persons " 'who ... are in a position to frustrate the implementation of a court order or the proper administration of justice.' " *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 863 (2d Cir.1988) (emphasis omitted) (quoting *Benjamin v. Malcolm*, 803 F.2d 46, 53 (2d Cir.1986)), *cert. denied*, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989). The Act even permits a federal court to remove state court actions to federal court in situations where specific statutory removal authority is absent. *City of Yonkers*, 858 F.2d at 863; *see United States v. New York Tel.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).

By bringing new suits in state court, the plaintiffs challenge the binding effect of the Settlement Agreement and the order of this court prohibiting new suits by class members. The new suits are a direct threat to the continuing viability of the judgment settling the class action. The suits will also consume the $10 million set aside to indemnify the settling defendants and reduce the recovery of the remaining class members.

If the cases had remained in state court, the court would have had the authority to order their removal. Moreover, any rulings inconsistent with the prior federal order would have been subject to further injunction by this court. *See City of Yonkers*, 858 F.2d at 864 (citing *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 501 F.2d 383, 384 (4th Cir.1974)). Taking jurisdiction of the cases after their voluntary removal is a "less drastic, and therefore preferable result." *City of Yonkers*, 858 F.2d at 864.

The removal of these actions to this court is a mechanism for protecting this court's judgment and order. Under the circumstances, it is the preferred method of enforcement, since it affords greater comity to state courts and is less burdensome on the parties than an injunction or contempt citation would be.

### B. *Motion to Dismiss*

The terms of the Settlement Agreement, incorporated in this court's order, bar plaintiffs from proceeding with this action. That these plaintiffs' injuries were not discovered until after the initial opt-out deadline of May 1, 1984 is irrelevant. The Settlement Agreement expressly included "persons who have not yet manifested injury." 597 F.Supp. at 865. The agreement was approved by this court, upheld by the Second Circuit, and left undisturbed by the Supreme Court. 618 F.Supp. at 624–25, *aff'd*, 818 F.2d 145 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Defendants' motion to dismiss is therefore granted with respect to all plaintiffs (other than the civilian plaintiffs).

Since the court has found that it has subject matter jurisdiction and has granted defendants' motion to dismiss, it need not decide defendants' motion to amend the notices of removal with regard to the plaintiffs who are class members. There has been, and continues to be, a court-ordered bar on suits by class members against the defendants; accordingly, the court also need not address defendants' motion for a permanent injunction.

## V. EQUITY

 At the heart of these lawsuits is plaintiffs' belief that it is unfair to bind them to the settlement because the latency of their injuries prevented them from knowing definitively whether or not they were included in the class at the time of the first deadline for opting out of the *Agent*

*Orange* class action. The law allows them to be so bound. *See Kane v. Johns–Manville Corp.*, 843 F.2d 636, 638–639 (2d Cir. 1988) (affirming reorganization plan that binds future claimants with no present injuries). They are in fact bound. 618 F.Supp. at 625, *aff'd*, 818 F.2d 145 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647. Nevertheless, plaintiffs' argument raises significant considerations of justice.

The courts and Congress have long recognized the utility of equity actions in which one party brings suit as the representative of a group of claimants. *See* 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1751, at 7 (2d ed. 1986). Such representative suits provide for, among other advantages, the filing of enforceable claims that would be economically infeasible for one party to pursue, the protection of all parties from inconsistent judgments, and the efficient administration of justice. *Id.* § 1754, at 54. Class actions are particularly valuable in mass torts where the transactional costs and burdens of individual litigation are great. *See In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. 710, 803–39 (E. & S.D.N.Y.1991); Hershenov, *The Effect of Equity on Mass Tort Law*, 1991 U.Ill. L.Rev. 269.

Nevertheless, a representative suit can work unfairness, particularly when the representation binds persons who only become aware that they are class members after settlement rather than persons who, at the time the action is brought and decided, can definitively determine whether they are in the class. One can imagine many genuine conflicts of interest between two such groups within a class action. *See In re Joint Eastern & Southern Dist. Asbestos Litig.*, 129 B.R. at 771–73. For example, current litigants might be willing to achieve a settlement even if it leaves funds inadequate to compensate future victims. Alternatively, future claimants might, in retrospect, disagree with prior litigation strategy or find new evidence in support of their claims.

Although Federal Rule of Civil Procedure 23(a) and (b) sets out criteria designed to ensure that all class members are being properly represented, for Rule 23(b)(3) actions, the "best practicable notice" requirement of Rule 23(c) is intended to provide additional protection of "the interests of individuals in pursuing their own litigations." *See* Fed.R.Civ.P. 23(c)(2) *Advisory Committee's Note to 1966 Amendments.* Yet, a plaintiff with a latent injury may even have actual notice and still not receive this additional protection because he or she may not have reason to believe the injury will appear.

Courts are authorized to take steps to alleviate these problems in the interest of fairness. As in the Manville bankruptcy actions, courts can oversee the appointment of a guardian to represent the interests of future claimants in class action litigations and settlements. *See In re Joint E. & S. Dist. Asbestos Litig.*, 129 B.R. at 773. Such a guardian was not necessary in the *Agent Orange* Settlement because of the way it was structured to cover future claimants. All of the courts which considered the *Agent Orange* Settlement were fully cognizant of the conflict arguments now hypothesized by the plaintiffs and took steps to minimize the problem in the way they arranged for long-term administration of the Settlement Fund.

In many cases the conflict between the interests of present and future claimants is more imagined than real. In the instant case, for example, the injustice wrought upon the plaintiffs is nonexistent. These plaintiffs, like all class members who suffer death or disability before the end of 1994, are eligible for compensation from the Agent Orange Payment Fund. The relevant latency periods and the age of the veterans ensure that almost all valid claims will be revealed before that time.

Even when it is proper and necessary for the courts to be solicitous of the interests of future claimants, the courts cannot ignore the interests of presently injured plaintiffs as well as defendants in achieving a settlement. Class action settlements simply will not occur if the parties cannot

set definitive limits on defendants' liability. Making settlement of Rule 23 suits too difficult will work harms upon plaintiffs, defendants, the courts, and the general public.

No less than in 1978, when the first of the *Agent Orange* suits was brought, the predicament of the Vietnam veterans and their families is one that warrants national concern and action. The settlement of the *Agent Orange* litigation promised, and has provided, a partial remedy for many veterans' hardships. But the suffering of the veterans and their families, and the frustration and anger it causes, continues to argue for a more systematic and powerful cure. In 1984 this court urged that "the government join with plaintiffs and defendants in even greater efforts toward this noble goal." 597 F.Supp. at 862. Last year, an important step was taken by the Department of Veterans Affairs, which expanded care provided to Vietnam veterans by establishing an official "presumption" that, in certain circumstances, syndromes such as non-Hodgkin's lymphoma and chloracne resulted from service in Vietnam. 38 C.F.R. § 3.311a (1990). Congress has since codified and expanded this decision in a statute that also establishes a program for federally funded research into the connection between herbicide exposure and various diseases, to be conducted in conjunction with the National Academy of Sciences. *See Agent Orange Act of 1991*, Pub.L. No. 102–4, 105 Stat. 11 (1991). Present and future claimants alleging exposure to Agent Orange thus may be eligible to receive compensation from both the *Agent Orange* settlement and the Department of Veteran Affairs.

By their actions, Congress and the Department of Veteran Affairs have recognized that the Agent Orange controversy has become a political rather than a judicial question. *See* 137 Cong. Rec. H719 *et seq.* (January 29, 1991) (statements of members of Congress in support of the Agent Orange Act). Except for overseeing the expenditure of the Settlement Fund to ensure that it does the greatest possible good for the veterans and their families, the court can do nothing more for the plaintiffs.

## VI. CONCLUSION

Decision on the plaintiffs' motion for remand as it affects the two civilian plaintiffs, Charles Brown and Clarence White, is reserved for further consideration. The motion for remand is denied as to all other plaintiffs. They are members of the class previously certified in the *Agent Orange* litigation. The claims of (or on behalf of) Shirley Ivy, Donald Ivy, Charles Jardon, Toni K. Jardon, Charles Jardon Jr., Robin Jardon, Warren Jardon, Sharon Jardon, Verda Wilson, Isaiah Wilson, Jr., Shirley Zalewaski, Yen Zalewaski, Gary Thomas, Mary Lee Thomas, James L. Kent, Emma I. Kent, Dawn Marie Inman, Bobby Joe Inman, Earl Thompson, Judy L. Thompson, James Donald Deloatch, Joyce Deloatch, Peggy Sands, Martin Sands, Emile Annibolli, Ursula Margot Parry, James D. Parry, Sr., James D. Parry, Jr., James Christopher Parry, Laura Jenkins, Eddie Jenkins, Ronald L. Hartman, Katherina H. Hartman, Jeffrey Alan Hartman, and Angela Hartman are dismissed.

No costs or disbursements are awarded. The court will not entertain a Rule 11 motion for sanctions. It has considered the issue and finds sanctions not warranted.

So ordered.

# APPENDIX 1

Agent Orange Class Assistance Program
Grants Awarded Through September 30, 1991

| Grant Awards Active as of September 30, 1991 | State | Award |
|---|---|---|
| American Association of University Affiliated Programs | NAT | $262,352 |
| Alivianc/Inner Resource Recovery System | TX | $121,409 |
| American GI Forum NVOP | TX | $250,553 |
| American GI Forum NVOP | CA | $174,259 |
| The American Legion | IL, IN, KS KY, MI, MN MO, NM, NY PA, OK,OR FL,NC,SD | $904,932 |
| Association for Retarded Citizens/GA | GA | $169,889 |
| ARCH Training Center Inc. | DC | $157,871 |
| Bayaud Industries Inc. | CO | $64,880 |
| Base Camp Inc. | TN | $129,271 |
| Community and Family Services Inc. | IN | $152,637 |
| Community Health Center, Inc. | OK | $155,934 |
| COPIN Foundation | NY | $182,210 |
| Community Outreach to Vietnam Era Returnees | VA, WV | $368,099 |
| Easter Seal Society of Iowa Inc. | IA | $56,191 |
| Albert Einstein College of Medicine | NY | $188,667 |
| Family Service Association of Brown Co. | WI | $74,890 |
| Family Service Assn. of Central Connecticut | CT | $75,422 |
| Federation for Children With Special Needs | MA | $135,034 |
| Family Services of Tidewater Inc. | VA | $154,832 |
| Florida State University | FL, AL | $134,943 |
| Kennedy Institute | MD | $231,270 |
| Lower Eastside Service Center | NY | $239,522 |
| Logan County Vietnam Veterans Inc. | WV | $88,358 |
| Mountain Comprehensive Care Center/PLUS | KY | $139,549 |
| McLean Hospital | MA | $169,900 |
| Mental Health Law Project | NAT | $160,119 |
| Montana Univ Affiliated Rural Inst. on Disabilities | MT | $179,030 |
| The Navajo Nation Department of Veterans Affairs | AZ | $171,938 |
| National Handicapped Sports | NAT | $169,990 |
| Center for Developmental Disabilities | SC | $772,627 |
| American Red Cross | NM | $141,643 |
| National Veterans Legal Services Project | NAT | $941,113 |
| Occupational Center of Essex County | NJ | $74,759 |
| Puerto Rico Vietnam Veterans Assistance Program | PR | $239,027 |
| Paralyzed Veterans of America | NAT | $318,125 |
| Philadelphia Vets. Multi-Service Center | PA | $205,493 |
| Rehabilitation Enterprises of N.E. Wyoming | WY | $100,351 |
| Saratoga County Rural Preservation Co. | NY | $77,615 |
| Southern California Veteran Service Center | CA | $150,653 |
| Suffolk County Youth Bureau | NY | $109,522 |
| Department of Human Resources City of Seattle | WA | $152,608 |
| Second Start Inc. | CA | $144,568 |
| Shriver Center University Affiliated Program | MA, ME, NH VT | $217,643 |
| Skagit Community Mental Health Center | WA | $67,473 |
| Southeast Oregon Rural Health Network (SORHN) | OR | $69,439 |
| Spina Bifida Association of America | MD | $423,238 |
| Swords to Plowshares | CA | $241,997 |

| | | |
|---|---|---|
| Team of Advocates for Special Kids | CA | $139,545 |
| United Cerebral Palsy | NY | $62,780 |
| United Cerebral Palsey Associations, Inc. | NAT | $291,423 |
| Universal Family Connection, Inc. | IL | $158,219 |
| University of Alaska | AK | $136,539 |
| University of Mississippi UAP | MS | $174,518 |
| University of North Carolina UAP | NC | $138,886 |
| Utah State University | UT | $150,831 |
| Veterans Assistance Center Inc. | CA | $174,215 |
| Veterans Benefits Clearinghouse Inc. | MA | $176,921 |
| Vets House, Inc. | WI | $109,235 |
| VETS Inc. | MI | $143,714 |
| Vietnam Era Veterans Assn. of Rhode Island | RI | $104,300 |
| Veterans Outreach Center Inc. | MA | $81,700 |
| Vietnam Veterans of Brevard Inc. | FL | $188,793 |
| Vietnam Veterans of America Ohio State Council | OH | $126,921 |
| Vietnam Veterans Agent Orange Victims Inc. | CT | $184,522 |
| Vietnam Veterans of California Inc. | CA | $278,773 |
| VVLP-St. Louis | MO | $121,268 |
| VVLP-Arkansas | AR | $49,079 |
| Vietnam Vets of San Diego | CA | $262,468 |
| Community Service Programs of West Alabama | AL | $87,090 |
| Wilderness Inquiry Inc. | MN | $62,013 |

**Total Active Grant Awards** **$13,518,951**

*Grants Expired or Terminated as of September 30, 1991*

| | | |
|---|---|---|
| Alabama VVLP | AL | $140,000 |
| American GI Forum NVOP | TX | $238,622 |
| American Red Cross | NM | $102,176 |
| American Red Cross | NM | $127,191 |
| The American Legion | IL, IN, KS KY, MI, MN MO, NM, NY PA, OK,OR | $699,621 |
| ARCH Training Center Inc. | DC | $100,000 |
| ARCH Training Center Inc. | DC | $154,910 |
| Association for Retarded Citizens/GA | GA | $162,078 |
| Base Camp Inc. | TN | $67,890 |
| Bayaud Industries Inc. | CO | $60,664 |
| Center for Developmental Disabilities | SC | $267,920 |
| Center for Developmental Disabilities | SC | $388,505 |
| Community Outreach to Vietnam Era Returnees | VA | $246,991 |
| Community Outreach to Vietnam Era Returnees | VA | $331,164 |
| COPIN Foundation | NY | $182,354 |
| County of Santa Cruz | CA | $25,000 |
| Department of Human Resources City of Seattle | WA | $149,813 |
| Albert Einstein College of Medicine | NY | $115,903 |
| Family Service Assn. of Central Connecticut | CT | $71,772 |
| Family Service Association of Brown Co. | WI | $54,629 |
| Family Service Association of Brown Co. | WI | $65,341 |
| Family Services of Tidewater Inc. | VA | $132,330 |
| Federation for Children With Special Needs | MA | $127,043 |
| Federation for Children With Special Needs | MA | $50,324 |

| | | |
|---|---|---|
| Help-Aid-Direction Inc. | NY | $92,410 |
| Kennedy Institute | MD | $217,208 |
| Logan County Vietnam Veterans Inc. | WV | $52,480 |
| McLean Hospital | MA | $152,034 |
| Mental Health Law Project | NAT | $128,608 |
| Mountain Comprehensive Care Center/PLUS | KY | $129,745 |
| National Handicapped Sports | MD | $194,153 |
| National Veterans Legal Services Project | DC | $50,000 |
| National Veterans Legal Services Project | DC | $692,272 |
| National Veterans Legal Services Project | DC | $883,777 |
| Occupational Center of Essex County | NJ | $71,000 |
| Occupational Center of Essex County | NJ | $74,759 |
| Vietnam Veterans of America Ohio State Council | OH | $120,705 |
| Paralyzed Veterans of America | DC | $95,200 |
| Philadelphia Vets. Multi-Service Center | PA | $165,185 |
| Saratoga County Rural Preservation Co. | NY | $44,591 |
| Southern California Veteran Service Center | CA | $147,305 |
| Spina Bifida Association of America | MD | $359,255 |
| Swords to Plowshares | CA | $90,000 |
| Swords to Plowshares | CA | $25,000 |
| Team of Advocates for Special Kids | CA | $126,109 |
| The American Legion | DC | $544,962 |
| Touro College - Jacob D. Fuchsberg Law Center | NY | $16,333 |
| United Cerebral Palsy | NY | $112,003 |
| Utah State University | UT | $142,035 |
| Veterans Assistance Center Inc. | CA | $25,000 |
| Veterans Assistance Center Inc. | CA | $76,887 |
| Veterans Benefits Clearinghouse Inc. | MA | $166,907 |
| VETS Inc. | MI | $128,771 |
| Vietnam Era Veterans Assn. of Rhode Island | RI | $82,816 |
| Vietnam Veterans Agent Orange Victims | CT | $101,800 |
| Vietnam Veterans of America Ohio State Council | OH | $77,000 |
| Vietnam Veterans of Brevard Inc. | FL | $129,920 |
| Vietnam Veterans of Brevard Inc. | FL | $205,174 |
| Vietnam Veterans of California Inc. | CA | $249,950 |
| Vietnam Vets of San Diego | CA | $249,968 |
| VVLP-Arkansas | AR | $79,883 |
| VVLP-Arkansas | AR | $106,602 |
| VVLP-St. Louis | MO | $96,928 |
| Woodlawn East Community and Neighbors | IL | $154,666 |

**Total Expired or Terminated Grant Awards** **$10,397,375**
**Total Assistance Program Grant Awards** **$23,916,326**

# APPENDIX 2

Agent Orange Class Assistance Program
Summaries of Active Grants
October 1, 1991

## Albert Einstein College of Medicine

### Bronx, New York

$186,667　　Contact: Mary DeVivo
October 1, 1991　　Telephone: (212) 430-2441

Provides services and assistance to address the needs of children of Vietnam veterans with developmental or other chronic disabilities and the needs of their families. Services include diagnostic assessments, adaptive equipment, rehabilitative therapy, case-management and counseling for both the children and families. Targeted service population is lower income Vietnam veteran families residing in the Bronx.

## American Red Cross

### Albuquerque, New Mexico

$141,643　　Contact: Joe Salas
July 1, 1991　　Telephone: (505) 265-8514

Assists Vietnam veterans and their families with rent and food while the veteran is in the Albuquerque area to participate in a 7-week PTSD outpatient treatment program at the local VA Medical Center. Project includes case-management services to assist in obtaining related services from area agencies, especially for those families with a child with a developmental or other chronic disability.

## Aliviane/Inner Resource Recovery System

### El Paso, Texas

$121,409　　Contact: Juan Avila
December 1, 1990　　Telephone: (915) 779-3764

Provides rehabilitative and supportive services for Vietnam veterans and their families in El Paso and surrounding West Texas area. Addresses the problems of drug and alcohol addiction and their related underlying causes such as post-traumatic stress disorder and provides support to family members affected by these issues. Also provides case-management services in order to meet related needs, including the needs of disabled children.

## ARCH Training Center Inc.

### Washington, D.C.

$157,871　　Contact: Ken Boggs
August 1, 1991　　Telephone: (202) 610-2957

Serves homeless Vietnam veterans and their families through transitional housing, training, employment readiness services as well as counseling and social services case-managed referral. Clients are taken into the program through an extensive needs assessment and provision of emergency services. The program is supplemented by a matching grant from the local area public utility company and training and job readiness is provided at no cost to AOCAP.

## American Association of University Affiliated Programs

### Washington, D.C.

$262,352　　Contact: Tino Zamora
May 1, 1991　　Telephone: 301-588-8252

National project to enlarge scope and quality of services provided to disabled children of Vietnam veterans and their families. AAUAP will provide training and technical assistance to AOCAP grantees, training and information on the needs of such veterans and families and on the veterans' benefits system to organizations serving developmentally disabled children, and foster collaboration among disabilities services organizations and AOCAP grantees serving Vietnam veterans.

## Association for Retarded Citizens/GA

### Atlanta, Georgia

$169,889　　Contact: Pat Smith
May 1, 1991　　Telephone: (404) 761-3150

Provides direct assistance and training for Vietnam veterans and their spouses who are parents of disabled children in accessing available benefits and services in the areas of health care, education and housing. Assistance is provided in obtaining free or low cost legal representation to resolve conflicts with federal and state agencies. The program is also developing a state-wide parent/peer support network for Vietnam veterans and their families with children with disabilities.

## American GI Forum NVOP

### San Antonio, Texas

$250,553　　Contact: Carlos Martinez
February 1, 1991　　Telephone: (512) 223-4088

Enables Vietnam veterans and their families to benefit from greater access to social, medical and rehabilitative services. Project Staff provides case-management services to secure available public and other benefits and services, and provides adaptive equipment to disabled children of Vietnam veterans Program is targeted toward Hispanic Vietnam veterans and their families living in or around the cities of Dallas and San Antonio, Texas.

## Base Camp Inc.

### Nashville, Tennessee

$129,271　　Contact: Jerry Washington
July 1, 1991　　Telephone: (615) 320-5616

Provides counseling, advocacy and case-management services for Vietnam veterans and their families in the middle Tennessee area, especially those who have needs relating to a child with a disability. Addresses problems and needs such as family disruption due to post-traumatic stress disorder and substance abuse, homelessness, and inability to access services and benefits to which these families may be entitled. Special case-management services and advocacy for families with a

## American GI Forum NVOP

### Los Angeles, CA

$174,259　　Contact: Carlos Martinez
October 1, 1991　　Telephone: (512) 223-4088

Enables Vietnam veterans and their families, particularly those families with needs relating to a child with a developmental or other disability, to benefit from greater access to and utilization of the system of social, medical and rehabilitative services to which they are entitled and for which they have a need. Targeted toward Hispanic Vietnam veterans and their families living in or around the city and county of Los Angeles, California.

## Bayaud Industries Inc.

### Denver, Colorado

$64,880　　Contact: Tom Amyotte
June 1, 1991　　Telephone: (303) 777-5281

Enables Vietnam veterans, the children of Vietnam veterans, or family members with disabilities and/or medical conditions to lead more productive, integrated and independent lives. Provides rehabilitation services and employment to 25 such individuals with disabilities annually. Services include case-management, vocational evaluation, work adjustment training, job placement and employment training services as well as information and referral services for these clients and their family members.

## Center for Developmental Disabilities

### Columbia, South Carolina

| | | |
|---|---|---|
| $772,627 | Contact: | Dr. Bryan Smith |
| July 1, 1991 | Telephone | (803) 777-4435 |

National program to provide Vietnam veterans and their families with access to assistance in providing for the needs of their developmentally disabled or chronically ill children and the needs of the families through a National Information System (NIS). The NIS provides toll free telephone access to trained human services counselors who counsel and advise individuals or other professionals who are assisting them in finding appropriate resources to address their needs through existing

## College of Rural Alaska - University of Alaska

### Fairbanks, Alaska

| | | |
|---|---|---|
| $136,539 | Contact. | Tima Priess |
| October 1, 1991 | Telephone: | (907) 456-4238 |

Expands the range and availability of services to Vietnam veterans and their families living in Interior Alaska and assists them in overcoming the cultural and geographic barriers to those services. Address family disruption associated with post-traumatic stress disorder and family stresses associated with having a child with a disability or other special needs. Operates through a service partnership with the VA Counseling Center (Vet Center) in Fairbanks and makes special efforts to

## Community and Family Services Inc.

### Portland, IN

| | | |
|---|---|---|
| $152,637 | Contact. | Larry Brade |
| January 1, 1991 | Telephone. | (219) 726-9318 |

Provides case-managed, coordinated community services for disabled children of Vietnam veterans and their families. Provides medical assessments, counseling, special education, advocacy, parent training and respite services as well as limited therapeutic and medical assistance to enable Vietnam veterans and their families to receive the highest degree of comprehensive services available in order to address their specific needs.

## Community Health Center, Inc.

### Oklahoma City, OK

| | | |
|---|---|---|
| $155,934 | Contact. | Wayne C. Thompson |
| January 1, 1991 | Telephone. | (405) 427-8683 |

Assists disabled children of Vietnam veterans and their families through the provision of services that are either not currently available or to which these children and families do not now have access. Includes intensive identification and recruitment and development of specific plans for meeting the individual and family needs of participants. Collaborative effort with other area agencies and organizations, including the developmental disability community and veteran service organizations in the

## Community Outreach to Vietnam Era Returnees

### Charlottesville, Virginia

| | | |
|---|---|---|
| $368,099 | Contact: | Mary James |
| July 1, 1991 | Telephone: | (804) 971-8449 |

Provides multi-service program for Vietnam veterans and their families throughout large parts of the region known as Appalachia. Includes extensive efforts to reach rural Vietnam veterans and their families and provides counseling and case-management assistance to enable those veterans and their family members to access and utilize public services which may be available to address their needs. Provides "bridge" services to Vietnam veteran families with children with developmental

## Community Service Programs of West Alabama

### Tuscaloosa, Al

| | | |
|---|---|---|
| $87,090 | Contact | Helen San Tucker |
| February 1, 1991 | Telephone | (205) 758-4756 |

Addresses the needs of Vietnam veterans and their families in six western Alabama counties. Provides direct counseling and support services to Vietnam veterans and their families with particular attention to the needs of children with physical and developmental disabilities. Provides intensive outreach in rural portions of the area, with emphasis on services to disadvantaged and minority Vietnam veterans and their families. Special efforts are made to enroll pre-school children

## COPIN Foundation

### Niagara Falls, New York

| | | |
|---|---|---|
| $182,210 | Contact | Sharon McGrath |
| June 1, 1991 | Telephone | (716) 283-5622 |

Provides case-managed and direct services for Vietnam veterans and their families including diagnostic assessments for children with developmental disabilities, health assessments and medical services for other family members and family and substance abuse counseling for Vietnam veterans and their family members. Also provides emergency support services for homeless Vietnam veterans and their families such as food and clothing.

## Department of Human Resources City of Seattle

### Seattle, Washington

| | | |
|---|---|---|
| $152,608 | Contact | Harold D. Whitehead |
| July 1, 1991 | Telephone· | (206) 684-4708 |

Provides outreach, counseling, advocacy, and supportive services to Vietnam veterans and their families, especially those with children with developmental or other disabilities in both the urban and rural areas of King County, Washington. Services include direct and referral services for Vietnam veterans and their children who have developmental, behavioral or other chronic disabilities. Special efforts are made to serve economically disadvantaged, minority, homeless and rural

## Easter Seal Society of Iowa Inc.

### Des Moines, Iowa

| | | |
|---|---|---|
| $56,191 | Contact· | Brian Wines |
| November 1, 1990 | Telephone | (515) 289-1933 |

Assists Vietnam veterans' children with disabilities to become as independent as possible and learn to interact successfully in society and to assist their families in meeting a range of related needs. Provides direct services to children to meet their needs for independent living skills and social recreation, and by providing family support services to meet their parents' needs for information, resources, respite care, education, and emotional support.

## Family Service Assn. of Central Connecticut

### Meriden, Connecticut

| | | |
|---|---|---|
| $75,422 | Contact | Jim Gavin |
| November 1, 1990 | Telephone | (203) 235-7923 |

Provides services to Vietnam veterans and their families to enable them to become more fully integrated and benefit from greater access and utilization of the public system of social, medical and rehabilitative services. Provides direct assistance to Vietnam veterans and their families, particularly those with disabled children in the form of assessments, family counseling, case-managed referrals and adaptive equipment necessary in meeting the needs of the child.

## Family Service Association of Brown Co.

### Green Bay, Wisconsin

| | | |
|---|---|---|
| $74,890 | Contact: | Mary Jo Kane |
| July 1, 1991 | Telephone: | (414) 499-8768 |

Provides group and individual counseling for Vietnam veterans and their families in Green Bay and surrounding northern Wisconsin area. Services include group and individual counseling for spouses of Vietnam veterans, children of Vietnam veterans as well as group and individual counseling for Vietnam veteran families. Therapy for Vietnam veterans and their families who are experiencing problems related to chemical abuse is provided along with family crisis counseling.

## Family Services of Tidewater Inc.

### Norfolk, Virginia

| | | |
|---|---|---|
| $154,832 | Contact: | Edward F. McCann |
| October 1, 1991 | Telephone: | (804) 622-7017 |

Serves Vietnam veterans, their families, especially those with children with disabilities, who live in the Greater Hampton Roads Area of Southeastern Virginia. Provides children and families with direct assistance in accessing available community resources and in effecting changes and enhancements within the existing service delivery system. Also provides informational and training workshops for the parents as well as in-house ancillary services.

## Federation for Children With Special Needs

### Boston, Massachusetts

| | | |
|---|---|---|
| $135,034 | Contact: | Deborah Crane |
| July 1, 1991 | Telephone: | (617) 482-2915 |

Assists families of Vietnam veterans with developmentally disabled children throughout the state of Massachusetts. Enables Vietnam veterans and their families to cope more effectively with the problems of raising a disabled child by conducting information and rights workshops and furnishing technical assistance in forming a parent network. Also provides individual case-management assistance for families in coordination with the parent counseling program at McLean

## Florida State University

### Tallahassee, Florida

| | | |
|---|---|---|
| $134,943 | Contact: | Dr. Charles R. Figley |
| April 1, 1991 | Telephone: | (904) 644-1588 |

Provides psychosocial services to Vietnam veterans, their families and children residing in northern Florida and southern Georgia and Alabama. Provides developmental and diagnostic assessments for children of Vietnam veterans, marriage, spouse and family counseling, in-residence consultations and the development and implementation of a family empowerment program. Particular emphasis in the project is placed on the needs of Vietnam veterans' children with disabilities.

## Kennedy Institute

### Baltimore, Maryland

| | | |
|---|---|---|
| $231,270 | Contact: | Paula Scher/Interim |
| August 1, 1991 | Telephone: | (301) 550-9700 |

Enables Vietnam veterans' children with developmental disabilities and their families to lead independent, productive, integrated lives. Provides individualized family support services to families and children with birth defects or disabilities, including case-management, home-based consumer and parent-based training and counseling. Includes efforts to integrate 30 families into existing service delivery system in Maryland, and to break down barriers to services for veterans

## Logan County Vietnam Veterans Inc.

### Mt. Gay, West Virginia

| | | |
|---|---|---|
| $88,358 | Contact | Mildred Hughes |
| April 1, 1991 | Telephone: | (304) 752-6555 |

Provides health, legal advocacy, and social services to Vietnam veterans and their families in a seven county area of rural Southwestern West Virginia. Services include public information and education, direct and referral services for Department of Veterans Affairs and other public benefits and counseling. Pro-bono and discounted medical services, adaptive and rehabilitative equipment and transportation to service delivery sites are also provided for Vietnam veterans and their

## Lower Eastside Service Center

### New York, New York

| | | |
|---|---|---|
| $239,522 | Contact | Eileen Pencer |
| April 1, 1990 | Telephone | (212) 233-5372 |

Has established a Vietnam Veterans and Family Services Center to address the service needs of Vietnam veterans and families whose lives have been affected by post-traumatic stress disorder, substance abuse or other dysfunctional behaviors. Provides case-management services, counseling, benefits assistance, resource and referral assistance and advocacy services to approximately 40 Vietnam veteran families. Provides developmental screening, evaluation and follow-up for 50

## McLean Hospital

### Belmont, Massachusetts

| | | |
|---|---|---|
| $169,900 | Contact | Dr. Charles Levy |
| April 1, 1991 | Telephone | (617) 484-0140 |

Assists, on a case-managed basis, Vietnam veterans with developmentally disabled children, in coping with the anger, fear and guilt associated with both Vietnam and parenting experiences. Provides testing and therapy to veterans in the greater Boston area, and linkages to other services to assist their developmentally disabled children in the areas of self advocacy, parent peer support and education. Enables veterans and families to cope more effectively with problems of raising a

## Mental Health Law Project

### Washington, D.C.

| | | |
|---|---|---|
| $160,119 | Contact | Leonard Rubenstein |
| September 1, 1991 | Telephone | (202) 467-5730 |

National program to enable Vietnam veterans and their families with children with developmental disabilities to have better access to and utilization of income support, health benefits and educational services under the Social Security and special education systems. Provides informational resources and consultation to veterans and families as well as other advocacy organizations so that low-income veteran families with children with disabilities have assistance in applying for benefits under

## Mississippi University Affiliated Program

### Hattiesburg, Mississippi

| | | |
|---|---|---|
| $174,578 | Contact | Dr. Jane Siders |
| October 1, 1991 | Telephone | (601) 266-5163 |

Facilitates access to health and human services for Vietnam veterans and their families with children with disabilities living in and around the cities of Hattiesburg, Jackson and Biloxi, Mississippi. Provides a range of services including case-management, advocacy, assessments of disabilities and other related needs. Operates through a service partnership with VA Counseling Centers (Vet Centers) in Jackson and Biloxi and will undertake special efforts to reach and provide services to rural

## Montana Univ Affiliated Rural Inst. on Disabilities
Missoula, Montana

$179,030 Contact: Gordon Hollingshead
September 1, 1990 Telephone: (406) 243-4131

Provides services and assistance to Vietnam veterans' children with disabilities and their families in western Montana, which they have been unable either to find or pay for and develops individualized service delivery plans for meeting each family's needs. Provides children and families with funding for services, adaptive equipment, special materials and diets, respite care, counseling, chore services. Also provides case-management assistance, parent support and advocacy training.

## Mountain Comprehensive Care Center/PLUS
Paintsville, Kentucky

$139,549 Contact: John A. Cook
August 1, 1991 Telephone: (606) 789-7587

Delivers direct and referral services to Vietnam veterans and their families residing within the Big Sandy Region of Eastern Kentucky. Emphasis is placed on providing services to children of Vietnam veterans who have developmental disabilities, to include screening, diagnostic assessments, parent training, transportation assistance, pre-school and nursery services, and crisis respite care. Also conducting an outreach educational effort throughout the counties surrounding the Big Sandy

## National Handicapped Sports
Bethesda, Maryland

$130,500 Contact: Jim McConkey
May 1, 1991 Telephone: (301) 652-7505

National program to locate disabled children of Vietnam veterans, disabled Vietnam veterans and family members and to introduce and involve these individuals in sports and recreation programs. Primary focus of the program is to provide services to disabled children of Vietnam veterans. Serves persons with physical disabilities, such as spinal cord injury, visual impairment, cerebral palsy, neuro-muscular disorders and other impairments resulting from birth defects or diseases such as

## National Veterans Legal Services Project
Washington, D.C.

$941,113 Contact: David Addlestone
July 1, 1991 Telephone: (202) 265-8305

National program to address the legal services needs of Vietnam veterans and their families through training and consultation with veterans' advocates and individual and class representation of veterans and family members in the new Court of Veterans Appeals and the VA administrative process. Endeavors to educate, train and upgrade skills of attorneys, service personnel and veterans' advocates providing services to Vietnam veterans

## Occupational Center of Essex County
Orange, New Jersey

$81,507 Contact: Marylou Dodge
October 1, 1991 Telephone: (201) 672-5800

Provides case-managed referral and follow-up services for Vietnam veterans and their families in northern New Jersey counties who have needs relating to a child with a developmental or other chronic disability. Counseling services and advocacy are provided to the families of children with disabilities. Emphasis is given in advocacy work in dealing with public educational systems and development of Individual Educational Plans on behalf of children with leaning disabilities.

## Ohio State Council Vietnam Veterans of America
Columbus, Ohio

$126,921 Contact: David Bradley
August 1, 1991 Telephone: (614) 228-0188

Assists homeless Vietnam veterans and their families through transitional housing, support services, and social services information and referral. Conducts regular outreach visits to homeless shelters in the Columbus area and elsewhere and also provides assistance to incarcerated Vietnam veterans and their families. Conducting a special rural outreach effort and will offer particular assistance to Vietnam veterans' children with developmental or other chronic disabilities.

## Paralyzed Veterans of America
Washington, D.C.

$318,125 Contact: Andrew Fleming
October 1, 1990 Telephone: (202) 872-1300

Provides Outward Bound participation for Vietnam veterans suffering from Post Traumatic Stress Disorder as well as Vietnam veterans with severe physical disabilities, women Vietnam veterans, wives of disabled Vietnam veterans and disabled children of Vietnam veterans. Program is conducted through four Outward Bound schools in Portland, Oregon; Morganton, North Carolina; Hurricane Island, Maine; and Minnetonka, Minnesota.

## Philadelphia Vets. Multi-Service Center
Philadelphia, Pennsylvania

$205,493 Contact: Edward J. Lowry
November 1, 1990 Telephone: (215) 546-9500

Serves Vietnam veterans and their families, particularly those with children with disabilities, who have needs such as psychological counseling, health services, veterans benefits and VA claims services. Addresses needs through case-managed referral and direct services in the areas of VA claims development and applying for other public programs. Also provides adaptive and rehabilitative equipment for veterans' children and transportation to VA medical facilities for veterans.

## Puerto Rico Vietnam Veterans Assistance Program
Puerto Rico

$239,027 Contact: William Ramirez
July 1, 1991 Telephone: (809) 756-5480

Provides VA claims preparation as a follow-up to a recently settled class action lawsuit which provided new opportunities to regain VA compensation for Vietnam veterans residing in Puerto Rico who are suffering from post-traumatic stress disorder. Also provides case-management services for Vietnam veterans' families to enhance service availability for a range of related needs, with a special emphasis on serving the needs of disabled children of Vietnam veterans and their families.

## Rehabiliation Enterprises of N.E. Wyoming
Sheridan, Wyoming

$100,351 Contact: Carmen Rideout
July 1, 1991 Telephone: (307) 672-7481

Serves Vietnam veterans' children with developmental or other disabilities in Wyoming and southeastern Montana to obtain medical, educational, rehabilitative, and other services to improve the quality of life; increase self-sufficiency, self-reliance, productivity and self-advocacy; and to promote community integration. Services include assessment and diagnostic services, individualized family service plans, case-management services and equipment or services which

## Saratoga County Rural Preservation Co.

Saratoga, New York

$77,615 Contact: Dottie O'Donnell
May 1, 1991 Telephone. (518) 587-3477

Provides Vietnam veterans, their families and children with direct assistance in obtaining permanent housing, health care, counseling for substance abuse and post-traumatic stress disorder, as well as the essentials necessary to maintain a quality life in a self-care setting. Serves individuals and families through both case-management and direct assistance with particular emphasis on assistance to veterans' children with disabilities who reside in rural areas of northern New York.

## Second Start Inc.

San Jose, California

$144,568 Contact: Betty Siemer
July 1, 1991 Telephone: (408) 371-5881

Provides a range of academic, therapeutic, case management, and pre-employment services to Vietnam veterans and families with children with developmental and learning disabilities. Conduct workshops for veterans and spouses to provide information regarding assessment and treatment strategies for developmental or learning problems. Services include assessments, remediation, academic and emotional support and pre-vocational training.

## Shriver Center University Affiliated Program

Waltham, Massachusetts

$255,648 Contact: Dr. Karen E. Gould, Ph.D.
October 1, 1991 Telephone: (617) 642-0238

A multi-faceted program to improve the quantity and quality of services available to developmentally disabled children of Vietnam veterans and to their families living in Maine, New Hampshire, Vermont, Massachusetts, and Rhode Island. Services include comprehensive evaluations, information and referral assistance, case coordination and follow-up services, comprehensive family support mechanisms, and technical assistance to other service providers.

## Skagit Community Mental Health Center

Skagit, Washington

$67,473 Contact: Jere G. LaFollette
November 1, 1990 Telephone: (206) 336-3193

Provides comprehensive case-management and counseling services to disabled children of Vietnam veterans residing in Skagit, Island, or San Juan Counties of northwest Washington State. Works to identify disabled children, and seeks to ensure that the full range of resources and services are made available in the provision of treatment and rehabilitation services. Short-term family therapy and emotional support will be provided to the families of these children.

## Southeast Oregon Rural Health Network (SORHN)

Chiloquin, Oregon

$69,439 Contact: Eddie L. Grady
January 1, 1991 Telephone: (503) 783-2171

Operates a nationwide electronic messaging network linking disabled young persons whose parents are Vietnam veterans for purposes of enhancing communications abilities and computer skills, enabling them to share life experiences and strategies for coping with their circumstances, and developing a peer support network of such young people. A core group is being trained in electronic messaging, and will function as recruiters and resource development personnel to ensure the ongoing operation

## Southern California Veteran Service Center

Los Angeles, California

$150,653 Contact: Arlene L. Williams
October 1, 1990 Telephone: (213) 671-8749

Enables disabled children of Vietnam veterans and their families to benefit from greater access and utilization of the public system of social, medical and rehabilitative services to which they are entitled. Provides direct assistance in the form of assessments, counseling and prosthetic devices and adaptive equipment such as eyeglasses, hearing aids, canes and wheelchairs or prosthetics. Physical and psychological diagnostic assessments are provided and families are provided

## Spina Bifida Association of America

Silver Spring, Maryland

$423,238 Contact: Susan Leibold
January 1, 1991 Telephone: (301) 770-7222

National program to enable children of Vietnam veterans with severe disabilities and the families of those children to pursue more fully integrated, productive and independent lives. Provides direct assistance to children and/or their families in the form of assessments, case-management, independent living skills training, training in continence management, home accessibility assistance and provision of rehabilitative and adaptive equipment.

## Suffolk County Youth Bureau

Hauppauge, New York

$109,522 Contact: Linda Devin-Sheehan
October 1, 1990 Telephone: (516) 348-5350

Provides support and direct services for children of Vietnam veterans in Suffolk County, Long Island, New York, including respite care, data-based information dissemination, child advocacy and training for educators and health care professionals. Conducted with the cooperation of the Suffolk County-wide system of health care and will focus on children with developmental and physical disabilities and those considered "youth-at-risk"

## Swords to Plowshares

San Francisco, California

$241,997 Contact: David Ewing, Esq.
April 1, 1990 Telephone: (415) 552-8804

Provide representation and advocacy for Vietnam veterans and their families in their attempts to access veterans benefits through the U.S. Department of Veterans Affairs and to provide consultation and support to other veterans advocates assisting veterans and their families in these processes. Serves primarily disadvantaged Vietnam veterans and their families and places particular emphasis on cases of appeals to the newly formed U.S. Court of Veterans Appeals.

## Team of Advocates for Special Kids

Anaheim, California

$139,545 Contact: Lane Cole
November 1, 1990 Telephone: (714) 533-8275

Serves Vietnam veteran families who have children with special needs by teaching parents how to meet their child's special education requirements. Provides information to parents on the nature and needs of their child's disability and gathers referrals specifically geared toward the needs of individual families. Trains parents to participate in educational decision-making processes and provides one on one assistance at Individualized Education Plan meetings.

## The American Legion

Indianapolis, Indiana

$904,932 
October 1, 1991

Contact. Max Tenberg 
Telephone: (202) 861-2759

Provides service referral with supporting information and self-help training to assist Vietnam veterans and their families in obtaining family counseling services and services for children with birth defects and other disabilities. Identifies existing programs and links the veteran and family to such services through their network. Currently operates in Kansas, Kentucky, New York, Pennsylvania, Illinois, Indiana, Michigan, Minnesota, Missouri, New Mexico, Oklahoma, and Oregon.

## The Navajo Nation Department of Veterans Affairs

Window Rock, Arizona

$171,938 
January 1, 1991

Contact· Leo Chischilly 
Telephone: (602) 871-6352

Assists Vietnam veterans' children with developmental disabilities and/or serious, chronic health conditions obtain the medical, education, rehabilitation, social and other services to improve the quality of their lives; increase their self-sufficiency, independence and productivity; and promote integration into their communities. Provides comprehensive assessment and diagnostic services, individual family service plans, case management services, and funding for services which are not

## United Cerebal Palsy

Canton, New York

$112,003 
September 1, 1991

Contact. Lorraine Laurin 
Telephone. (315) 386-8191

Provides comprehensive family support services for Vietnam veterans and their families having a child with a chronic disability in the counties of St. Lawrence, Franklin, Clinton and Essex, New York. Program is designed to remediate the lack of service accessibility for Vietnam veterans and their families. The program is home-based and provides direct case-managed services to include diagnostic evaluations, treatment and goal planning for a child's on-going life long continuum of care

## United Cerebral Palsy Associations, Inc.

Washington, D.C.

$291,423 
October 1, 1991

Contact· Bonnie Wooten Webb 
Telephone. (202) 842-1266

Operates a nationwide advocacy and peer support system for Vietnam veterans' children with disabilities to enhance interaction with peers, family members and the community through increased utilization and funding of assistive technology. Such technology includes adapted toys, computers, seating systems, powered mobility, communication devices, special switches and other available or adapted solutions. Developing assistive technology peer support resource center, a

## Universal Family Connection, Inc.

Chicago, Illinois

$158,219 
March 1, 1991

Contact: Raymond Swope 
Telephone: (312) 445-0448

Provides a range of services to Vietnam veterans and their families in the Chicago area with priority given to families who have children with developmental, physical or behavioral disabilities. Provides such services as family counseling, respite care, transportation, education & vocational assessment, employment counseling & placement, homemaker services, home health care, legal advocacy, diagnosis and assessment, peer support, information and referral, recreational services and

## University of North Carolina-Chapel Hill

Chapel Hill, North Carolina

$138,886 
October 1, 1991

Contact· Dr. Thomas Wasileski 
Telephone: (919) 966-5171

Provides comprehensive services to developmentally disabled and educationally-at-risk children and families of Vietnam veterans throughout North Carolina. Offers a variety of services including in-depth evaluations of eligible children and their families, the development of Specialized Family Service Plans, and training for professionals It will further help other service providers and professionals identify and meet the special needs of Vietnam veterans and their families.

## Utah State University

Logan, Utah

$150,831 
December 1, 1990

Contact. Vonda Lauritzen 
Telephone. (801) 750-2001

Serves Vietnam veterans and their families living in remote or rural areas or the Navajo reservation, who have a child with a birth defect or developmental disability. Enables these families to benefit from greater access to systems of social, medical and rehabilitative services, enables their children to be mainstreamed into local programs , and enables those families to gain more knowledge about the child's condition and become successful advocates for their children.

## Veterans Assistance Center Inc.

Berkeley, California

$174,215 
January 1, 1991

Contact Lou Bates 
Telephone: (415) 849-2144

Provides residential assistance and supportive services for Vietnam veterans and their families in Alameda, Santa Clara and Contra Costa counties of California. Addresses the problem of homelessness among minority veterans, their spouses and the special needs of their children in the East Bay area, and provides the necessary skills to maintain independent living and enables the veteran and/or family member to become a productive member of society and the local community.

## Veterans Benefits Clearinghouse Inc.

Roxbury, Massachusetts

$176,921 
June 1, 1991

Contact. Ralph Cooper 
Telephone: (617) 445-7030

Provides Vietnam veterans and their families with counseling, housing and other services in order to address a broad spectrum of problems faced by that population. Establishing a network of public and private agencies responsive to the specific needs of Black, Latino and other Vietnam veterans and families residing in the Greater Metropolitan Boston area. Establishing a mechanism in the state to identify and provide services for minority Vietnam veterans with special needs children.

## Veterans Outreach Center Inc.

Pittsfield, Massachusetts

$81,700 
November 1, 1990

Contact: Daniel Denault 
Telephone: (413) 499-0256

Provides mobile services to Vietnam Veterans and their families to enable individuals to access available services and benefits. Provides case-management, referral and transportation services to veterans and their families to enable them to gain access to other programs of services and benefits available to them throughout the service area of Massachusetts, as well as in adjacent areas of Connecticut, New Hampshire, and New York.

## Vets House, Inc.

Madison, Wisconsin

$109,235 Contact: Donna Vieth

October 1, 1990 Telephone: 608-255-1972

Provides services to improve the coping mechanisms and services availability for disabled children of Vietnam veterans and their families in the greater Madison Wisconsin area Provides informational and case-managed referral services as well as counseling and other direct services and assistance to address the needs of children of veterans with developmental or other chronic disabilities as well as the needs of their families. A primary focus of the project will be children with learning

## VETS Inc.

Muskegon, Michigan

$143,714 Contact: Dennis Cobler

August 1, 1991 Telephone: (616) 728-6385

Assists disadvantaged Vietnam veterans and families throughout Michigan, particularly those with needs relating to a child with a developmental or other disability, in securing appropriate benefits and services. Operates from six sites in the state of Michigan with services targeted to veterans and their families living in rural areas. Provides case-management services, assistance in benefits applications and adaptive and rehabilitative equipment for children with disabilities.

## Vietnam Era Veterans Assn. of Rhode Island

Providence, Rhode Island

$104,300 Contact: Joseph DeResta

January 1, 1991 Telephone: (401) 521-6710

Assists Vietnam veterans and their families in Rhode Island and Massachusetts, particularly those with needs relating to children with developmental or other disabilities, in meeting their needs for health care and other social services. Provides direct, case-managed assistance to veterans and their families in order to enable them to achieve an optimum level of success and productivity. Establishing a parent resource network, linking veteran families with developmentally disabled children.

## Vietnam Veterans Agent Orange Victims Inc.

Darien, Connecticut

$184,522 Contact: Phil Kraft

January 1, 1991 Telephone (203) 656-0003

Provides case-managed limited medical assistance to Vietnam veterans' children with developmental or other disabilities on a nationwide basis. Conducted in conjunction with the Brandie Schieb Children's Fund and provides limited economic assistance/relief to families of Vietnam veterans who have exhausted all other resources in their efforts to provide quality medical care for their children with repairable and/or treatable developmental disabilities.

## Vietnam Veterans of Brevard Inc.

Melbourne, Florida

$205,174 Contact: Joe Clark

September 1, 1991 Telephone: (407) 255-7411

Provides emergency and transitional services including housing, transportation and food, to Vietnam veterans and their families in the northern Florida area who are experiencing life crises which may be related to the experiences of the veteran family member during the Vietnam war. Provides such veterans and their families with counseling and case-managed referral services in order that they may acquire the skills and stability to lead more self-directed and productive lives.

## Vietnam Veterans of California Inc.

Santa Rosa, California

$278,773 Contact: Peter T. Cameron

December 1, 1990 Telephone: (707) 578-8387

Provide health and social services to Vietnam veterans and families, particularly those having children with developmental or other disabilities, residing in Northern California. Services include direct and referral services for children with physical, developmental and behavioral disabilities, counseling for veteran family members, substance abuse services, as well as legal and financial counseling. Provides adaptive and rehabilitative equipment for children through private sector

## Vietnam Vets of San Diego

San Diego, California

$262,468 Contact: Dr. Marc Gotbaum

February 1, 1991 Telephone: (619) 295-8561

Provides direct and case-managed referral services for Vietnam veterans and their families, particularly those with a child with a developmental or other disability residing in a wide area surrounding San Diego. Services include diagnostic assessments for children, counseling for veterans and families, and shelter assistance for indigent veterans and family members. Counseling provided to families of children with disabling conditions with particular attention given to the needs

## VVLP-Arkansas

Pine Bluff, Arkansas

$106,602 Contact: John Eeckhoudt

September 1, 1990 Telephone: (501) 534-3100

Assists disadvantaged Vietnam veterans and families in the Pine Bluff and Greater Little Rock areas of Arkansas. Emphasis is placed on helping veterans and families gain self-sufficiency and meet other critical needs, including housing, medical care, and employment. Provides assistance to children of veterans who have special health care needs in facilitating their referral to appropriate community resources in order to address their needs and the needs of their families.

## VVLP-Arkansas

Pine Bluff, Arkansas

$49,079 Contact: John Eeckhoudt

October 1, 1991 Telephone: (501) 534-3100

Assists disadvantaged Vietnam veterans and families in the Pine Bluff and Greater Little Rock areas of Arkansas. Emphasis is placed on helping veterans and families gain self-sufficiency and meet other critical needs, including housing, medical care, and employment. Provides assistance to children of veterans who have special health care needs in facilitating their referral to appropriate community resources in order to address their needs and the needs of their families.

## VVLP-St. Louis

St Louis, Missouri

$129,392 Contact: William D. Elmore

October 1, 1991 Telephone: (314) 367-5505

Provides counseling and transitional housing for homeless Vietnam veterans and families in the greater St. Louis area. Serves veterans and their families who are experiencing problems relating to the veteran's post-traumatic stress disorder, alcohol or substance abuse. Provides transitional housing, meals and other basic resources to veterans and families, as well as assistance in securing productive employment. Assistance provided to veteran families with a child with developmental

### Wilderness Inquiry Inc.

Minneapolis, Minnesota

$62,013

October 1, 1990

Contact. Susan Fishman

Telephone (612) 379-3858

Provides a range of outdoor activities designed to socially integrate children of Vietnam veterans and families in experiences that inspire personal growth, enhance community integration, develop peer relationships, develop independent living skills and build self-esteem. Activities include dog-sledding, canoeing, camping and range from one day to a week in length. Provided primarily to disabled children of veterans, but will include non-disabled youth and family

## APPENDIX 3

### Agent Orange Class Assistance Program
### Participants Through 6-30-91

| Grantee | State | Months in Operation | Vets Served | Other Fam Mem Svd | Children Served | Total Served |
|---|---|---|---|---|---|---|
| AAUAP | MD | 2 | 0 | 0 | 0 | NEW |
| Aliviane | TX | 7 | 88 | 5 | 36 | 129 |
| American GI Forum | TX | 21 | 281 | 173 | 134 | 588 |
| American Legion | NAT | 24 | 4341 | 746 | 2109 | 7196 |
| American Red Cross | NM | 24 | 128 | 140 | 337 | 605 |
| ARCH | DC | 24 | 62 | 12 | 34 | 108 |
| Association for Retarded Children | GA | 17 | 135 | 172 | 248 | 555 |
| Basecamp | TN | 14 | 47 | 49 | 54 | 150 |
| Bayaud Industries | CO | 16 | 33 | 1 | 1 | 35 |
| Community Health Centers | OK | 6 | 25 | 88 | 47 | 160 |
| Chicago-Universal Family Connection | IL | 4 | 38 | 40 | 82 | 160 |
| Community and Family Services, Inc | IN | 6 | 32 | 41 | 30 | 103 |
| COPIN | NY | 13 | 1147 | 197 | 187 | 1531 |
| COVER | VA | 24 | 934 | 458 | 207 | 1599 |
| Easter Seals IA | IA | 8 | 17 | 1 | 7 | 25 |
| Einstein | NY | 9 | 6 | 15 | 48 | 69 |
| Family Services of Brown County | WI | 24 | 124 | 81 | 76 | 281 |
| Family Services of Conn | CT | 9 | 47 | 0 | 54 | 101 |
| Federation for Children w/ Spec Needs | MA | 27 | 71 | 136 | 171 | 378 |
| Florida State University | FL | 3 | 7 | 8 | 6 | 21 |
| Kennedy Institute | MD | 12 | 30 | 41 | 51 | 122 |
| Logan Vietnam Veterans | WV | 15 | 243 | 0 | 149 | 392 |
| Lower Eastside Service Center | NY | 15 | 42 | 55 | 67 | 164 |
| McLean Hospital (Harvard) | MA | 15 | 309 | 249 | 181 | 739 |
| Mental Health Law Project | NAT | 11 | 17 | 15 | 0 | 32 |
| Montana UAP | MT | 10 | 47 | 14 | 55 | 116 |
| Mountain Care | KY | 11 | 153 | 58 | 79 | 290 |
| Nat Vets Legal Services Project | NAT | 33 | 5048 | 2699 | 132 | 7879 |
| National Handicapped Sports | NAT | 27 | 86 | 126 | 148 | 360 |
| National Information System, USC | NAT | 24 | 892 | 20 | 3631 | 4543 |
| Navajo Dept of Vets Affairs | AZ | 6 | 25 | 0 | 20 | 45 |
| Occupational Center | NJ | 21 | 23 | 35 | 59 | 117 |
| Paralyzed Veterans of America | NAT | 25 | 133 | 0 | 3 | 136 |
| Philadelphia Vets Multi-Service Ctr | PA | 20 | 673 | 40 | 54 | 767 |
| Puerto Rico Veterans Program | PR | 0 | 0 | 0 | 0 | NEW |
| RENEW | WY | 0 | 0 | 0 | 0 | NEW |
| Saratoga Rural Preservation | NY | 15 | 240 | 29 | 35 | 304 |
| SE Oregon Rural Health Network | OR | 6 | 1 | 5 | 8 | 14 |
| SEAVAC | WA | 14 | 258 | 30 | 53 | 341 |
| Second Start | CA | 0 | 0 | 0 | 0 | NEW |
| Shriver Ctr | MA | 9 | 18 | 23 | 141 | 182 |
| Skagit | WA | 8 | 13 | 29 | 26 | 68 |
| So. Calif Vets Services Council | CA | 21 | 461 | 239 | 181 | 881 |

| Grantee | State | Months in Operation | Vets Served | Other Fam Mem Svd | Children Served | Total Served |
|---|---|---|---|---|---|---|
| Spina Bifida Association of America | NAT | 20 | 0 | 0 | 294 | 294 |
| St Louis VVLP | MO | 21 | 394 | 28 | 192 | 614 |
| Suffolk County Youth Bureau | NY | 9 | 80 | 52 | 46 | 178 |
| Swords To Plowshares | CA | 27 | 1296 | 26 | 18 | 1340 |
| Team of Advocates for Special Kids | CA | 27 | 0 | 0 | 403 | 403 |
| Tidewater Family Services | VA | 9 | 34 | 30 | 57 | 121 |
| United Cerebral Palsy of Canton | NY | 9 | 20 | 27 | 16 | 63 |
| Utah State University | UT | 19 | 125 | 130 | 68 | 323 |
| Veterans Assistance Center, Berkeley | CA | 24 | 290 | 27 | 84 | 401 |
| Veterans Benefits Clearinghouse | MA | 14 | 182 | 35 | 120 | 337 |
| Vets House | WI | 9 | 209 | 20 | 12 | 241 |
| VETS Inc | MI | 18 | 118 | 114 | 383 | 615 |
| Vietnam Era Veterans Association, RI | RI | 19 | 337 | 245 | 285 | 867 |
| Vietnam Veterans Agent Orange Victims | NAT | 22 | 1016 | 432 | 413 | 1861 |
| Vietnam Veterans of America, Ohio | OH | 23 | 512 | 83 | 156 | 751 |
| Vietnam Veterans of Brevard | FL | 22 | 3929 | 96 | 11 | 4036 |
| Vietnam Veterans of California | CA | 19 | 152 | 47 | 387 | 586 |
| Vietnam Veterans of San Diego | CA | 17 | 212 | 135 | 182 | 529 |
| VVLP Arkansas | AR | 22 | 417 | 201 | 384 | 1002 |
| Western Alabama | AL | 6 | 40 | 16 | 13 | 69 |
| Western Mass Vets Outreach | MA | 10 | 314 | 42 | 19 | 375 |
| Wilderness Inquiry | MN | 9 | 21 | 14 | 67 | 102 |
| **TOTALS** | | | 25638 | 7814 | 12465 | 45917 |

Source for all appendices: Third Annual Report of the Agent Orange Class Assistance Program (Oct. 3, 1991)